(Slip Opinion) OCTOBER TERM, 2010 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PEPPER *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 09–6822.   Argued December 6, 2010—Decided March 2, 2011

After pleading guilty to drug charges, petitioner Pepper was sentenced under the Federal Sentencing Guidelines to 24 months' imprisonment, a nearly 75 percent downward departure from the low end of the Guidelines range based in part on his substantial assistance, followed by five years of supervised release. In *Pepper I, t*he Eighth Circuit reversed and remanded for resentencing in light of, *inter alia*, *United States* v. *Booker*, 543 U. S. 220. Pepper, who had begun serving his supervised release, testified at his resentencing hearing that he was no longer a drug addict, having completed a 500-hour drug treatment program while in prison; that he was enrolled in community college and had achieved very good grades; and that he was working part time. Pepper's father testified that he and his son were no longer estranged, and Pepper's probation officer testified that a 24-month sentence would be reasonable in light of Pepper's substantial assistance, postsentencing rehabilitation, and demonstrated low recidivism risk. The District Court again sentenced Pepper to 24 months, granting a 40 percent downward departure based on Pepper's substantial assistance and a further downward variance based on, *inter alia*, Pepper's rehabilitation since his initial sentencing. In *Pepper II,* the Eighth Circuit again reversed and remanded for resentencing, concluding that Pepper's postsentencing rehabilitation could not be considered as a factor supporting a downward variance, and directing that the case be assigned to a different district judge. After this Court vacated and remanded the *Pepper II* judgment in light of *Gall* v. *United States*, 552 U. S. 38, the Eighth Circuit, in *Pepper III,* reversed and remanded once more. At the second resentencing hearing, Pepper informed the new district judge that he was still in school, was about to be promoted at his job, and had married and was

supporting his new family. Noting the nearly identical remand language of *Pepper II* and *Pepper III,* the court observed that it was not bound to reduce Pepper's range by 40 percent for substantial assistance. Instead, it found him entitled to a 20 percent reduction and refused to grant a further downward variance for, *inter alia*, postsentencing rehabilitation. It imposed a 65-month prison term and 12 months of supervised release. In *Pepper IV,* the Eighth Circuit once again rejected Pepper's postsentencing rehabilitation argument. It also rejected his claim that the law of the case from *Pepper II* and *Pepper III* required the District Court to reduce the applicable Guidelines range by at least 40 percent.

*Held:*

1. When a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation, and such evidence may, in appropriate cases, support a downward variance from the now-advisory Guidelines range. Pp. 9–27.

(a) Consistent with the principle that "the punishment should fit the offender and not merely the crime," *Williams* v. *New York*, 337 U. S. 241, 247, this Court has observed a consistent and uniform policy "under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law," *id.,* at 246, particularly "the fullest information possible concerning the defendant's life and characteristics," *id.*, at 247. That principle is codified at 18 U. S. C. §3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct," and at §3553(a), which specifies that sentencing courts must consider, among other things, a defendant's "history and characteristics," §3553(a)(1). The Guidelines, which *Booker* made "effectively advisory," 543 U. S., at 245, "should be the starting point and the initial benchmark," but district courts may impose sentences within statutory limits based on appropriate consideration of all of the §3553(a) factors, subject to appellate review for "reasonableness," *Gall* v. *United States*, 552 U. S. 38, 49–51. This sentencing framework applies both at initial sentencing and at any subsequent resentencing after a sentence has been set aside on appeal. Pp. 9–12.

(b) Postsentencing rehabilitation evidence may support a downward variance from the advisory Guidelines range. The plain language of §3661 makes clear that there is "[n]o limitation . . . on . . . background, character, and conduct" information, and it makes no distinction between an initial sentencing and a subsequent resentencing. In addition, postsentencing rehabilitation evidence may be

Syllabus

highly relevant to several §3553(a) factors that district courts are required to consider at sentencing. The extensive evidence of Pepper's rehabilitation since his initial sentencing is clearly relevant to the selection of an appropriate sentence here. Most fundamentally, that evidence provides the most up-to-date picture of his "history and characteristics." §3553(a)(1). At the time of his initial sentencing, he was an unemployed drug addict who was estranged from his family and sold drugs. By his second resentencing, he had been drug-free for nearly five years, was attending college, was a top employee slated for promotion, had re-established a relationship with his father, and was married and supporting a family. His postsentencing conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that sentencing courts must consider. See §§3553(a)(2)(B)–(C). Pp. 12–15.

(c) The contrary arguments advanced by *amicus* appointed to defend the judgment are unpersuasive. Pp. 15–26.

(1) While §3742(g)(2)—which prohibits a district court at resentencing from imposing a sentence outside the Guidelines range except upon a ground it relied upon at the prior sentencing—effectively precludes a court from considering postsentencing rehabilitation, that provision is invalid after *Booker*. Like the provisions invalidated in *Booker*—§§3553(b)(1) and 3742(e)—§3742(g)(2) requires district courts effectively to treat the Guidelines as mandatory in an entire set of cases. Thus, the proper remedy is to invalidate the provision. While applying §3742(g)(2) at resentencing would not always result in a Sixth Amendment violation, this Court rejects a partial invalidation that would leave the Guidelines effectively mandatory in some cases and advisory in others. The fact that §3742(g)(2) permits a resentencing court on remand to impose a non-Guidelines sentence where the prior sentence expressly relied on a departure upheld by the court of appeals also does not cure the constitutional infirmity. And the argument that any constitutional infirmity in §3742(g)(2) can be remedied by invalidating §3742(j)(1)(B) is rejected. Pp. 15–20.

(2) This Court finds unpersuasive *amicus'* arguments focusing on Congress' sentencing objectives under §3553(a). Contrary to *amicus'* contention, §3742(g)(2) does not reflect a congressional purpose to preclude consideration of postsentencing rehabilitation evidence. Thus, that provision has no bearing on this Court's analysis of whether §3553(a) permits consideration of such evidence. Nor is the consideration of postsentencing rehabilitation inconsistent with the sentencing factor in §3553(a)(5)—which directs sentencing courts to consider "any pertinent policy statement" of the Sentencing Commission—particularly as the pertinent policy statement in this case is

based on unconvincing policy rationales not reflected in the relevant sentencing statutes. Consideration of postsentencing rehabilitation is also not inconsistent with §3553(a)(6)—which requires courts to consider "the need to avoid unwarranted sentenc[ing] disparities among defendants with similar records who have been found guilty of similar conduct"—as any disparity arises only from the normal trial and sentencing process. The differences in procedural opportunity that may result because some defendants are inevitably sentenced in error and must be resentenced are not the kinds of "unwarranted" sentencing disparities that Congress sought to eliminate under §3553(a)(6). Pp. 21–26.

(d) On remand, the District Court should consider and give appropriate weight to the postsentencing rehabilitation evidence, as well as any additional evidence concerning Pepper's conduct since his last sentencing. Pp. 26–27.

2. Because the Eighth Circuit in *Pepper III* set aside Pepper's entire sentence and remanded for *de novo* resentencing, the District Court was not bound by the law of the case doctrine to apply the same 40 percent departure applied by the original sentencing judge. To avoid undermining a district court's original sentencing intent, an appellate court when reversing one part of a sentence "may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy [§3553(a)'s] sentencing factors." *Greenlaw* v. *United States*, 554 U. S. 237, 253. That is what the Eighth Circuit did here. Pp. 27–30.

570 F. 3d 958, vacated in part, affirmed in part, and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, and GINSBURG, JJ., joined, and in which BREYER and ALITO, JJ., joined as to Part III. BREYER, J., filed an opinion concurring in part and concurring in the judgment. ALITO, J., filed an opinion concurring in part, concurring in the judgment in part, and dissenting in part. THOMAS, J., filed a dissenting opinion. KAGAN, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–6822

JASON PEPPER, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[March 2, 2011]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

This Court has long recognized that sentencing judges "exercise a wide discretion" in the types of evidence they may consider when imposing sentence and that "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams* v. *New York*, 337 U. S. 241, 246–247 (1949). Congress codified this principle at 18 U. S. C. §3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background, character, and conduct," and at §3553(a), which sets forth certain factors that sentencing courts must consider, including "the history and characteristics of the defendant," §3553(a)(1). The United States Court of Appeals for the Eighth Circuit concluded in this case that the District Court, when resentencing petitioner after his initial sentence had been set aside on appeal, could not consider evidence of petitioner's rehabilitation since his initial sentencing. That conclusion conflicts with longstanding principles of federal sentencing law and Congress' express directives in §§3661 and

3553(a).     Although   a   separate   statutory   provision,
§3742(g)(2), prohibits a district court at resentencing from
imposing   a   sentence   outside   the   Federal   Sentencing
Guidelines range except upon a ground it relied upon at
the prior sentencing—thus effectively precluding the court
from  considering  postsentencing  rehabilitation  for  pur-
poses of imposing a non-Guidelines sentence—that provi-
sion   did   not   survive   our   holding   in   *United States*   v.
*Booker*, 543 U. S. 220 (2005), and we expressly invalidate
it today.

We hold that when a defendant's sentence has been set
aside  on  appeal,  a  district  court  at  resentencing  may
consider evidence of the defendant's postsentencing reha-
bilitation  and  that  such  evidence  may,  in  appropriate
cases,   support   a   downward   variance   from   the   now-
advisory  Federal  Sentencing  Guidelines  range.     Sepa-
rately, we affirm the Court of Appeals' ruling that the law
of the case doctrine did not require the District Court in
this case to apply the same percentage departure from the
Guidelines range for substantial assistance that had been
applied at petitioner's prior sentencing.

I

In October 2003, petitioner Jason Pepper was arrested
and charged with conspiracy to distribute 500 grams or
more of methamphetamine in violation of 21 U. S. C. §846.
After  pleading  guilty,  Pepper  appeared  for  sentencing
before then-Chief Judge Mark W. Bennett of the U. S.
District Court for the Northern District of Iowa.   Pepper's
sentencing  range  under  the  Guidelines  was  97  to  121
months.[1]   The Government moved for a downward depar-

————————
[1] Although the charge to which Pepper pleaded guilty carried a man-
datory minimum of 120 months' imprisonment, the mandatory mini-
mum  did  not  apply  because  he  was  eligible  for  safety-valve  relief
pursuant to 18 U. S. C. §3553(f) (2000 ed.) and §5C1.2 of the United
States Sentencing Guidelines Manual (Nov. 2003) (USSG).

ture pursuant to USSG §5K1.1 based on Pepper's substantial assistance and recommended a 15 percent downward departure.[2] The District Court, however, sentenced Pepper to a 24-month prison term, resulting in an approximately 75 percent downward departure from the low end of the Guidelines range, to be followed by five years of supervised release. The Government appealed Pepper's sentence, and in June 2005, the Court of Appeals for the Eighth Circuit reversed and remanded for resentencing in light of our intervening decision in *Booker* (and for another reason not relevant here). See *United States* v. *Pepper*, 412 F. 3d 995, 999 (2005) *(Pepper I)*. Pepper completed his 24-month sentence three days after *Pepper I* was issued and began serving his term of supervised release.

In May 2006, the District Court conducted a resentencing hearing and heard from three witnesses. In his testimony, Pepper first recounted that while he had previously been a drug addict, he successfully completed a 500-hour drug treatment program while in prison and he no longer used any drugs. App. 104–105. Pepper then explained that since his release from prison, he had enrolled at a local community college as a full-time student and had earned A's in all of his classes in the prior semester. *Id.*, at 106–107. Pepper also testified that he had obtained employment within a few weeks after being released from custody and was continuing to work part-time while attending school. *Id.*, at 106–110. Pepper confirmed that he was in compliance with all the conditions of his supervised release and described his changed attitude since his arrest. See *id.*, at 111 ("[M]y life was basically headed to

---

[2] USSG §5K1.1 provides that a court may depart from the Guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." Pepper provided information to Government investigators and a grand jury concerning two other individuals involved with illegal drugs and guns.

either where—I guess where I ended up, in prison, or death. Now I have some optimism about my life, about what I can do with my life. I'm glad that I got this chance to try again I guess you could say at a decent life. . . . My life was going nowhere before, and I think it's going somewhere now").

Pepper's father testified that he had virtually no contact with Pepper during the 5-year period leading up to his arrest. *Id.*, at 117. Pepper's drug treatment program, according to his father, "truly sobered him up" and "made his way of thinking change." *Id.*, at 121. He explained that Pepper was now "much more mature" and "serious in terms of planning for the future," *id.*, at 119, and that as a consequence, he had re-established a relationship with his son, *id.*, at 118–119.

Finally, Pepper's probation officer testified that, in his view, a 24-month sentence would be reasonable in light of Pepper's substantial assistance, postsentencing rehabilitation, and demonstrated low risk of recidivism. *Id.*, at 126–131. The probation officer also prepared a sentencing memorandum that further set forth the reasons supporting his recommendation for a 24-month sentence.

The District Court adopted as its findings of fact the testimony of the three witnesses and the probation officer's sentencing memorandum. The court granted a 40 percent downward departure based on Pepper's substantial assistance, reducing the bottom of the Guidelines range from 97 to 58 months. The court then granted a further 59 percent downward variance based on, *inter alia*, Pepper's rehabilitation since his initial sentencing. *Id.*, at 143–148.[3] The court sentenced Pepper to 24 months of imprisonment, concluding that "it would [not] advance any

_____

[3] The court also cited Pepper's lack of a violent history and, to a lesser extent, the need to avoid unwarranted sentencing disparity with Pepper's co-conspirators. App. 144–145.

purpose of federal sentencing policy or any other policy behind the federal sentencing guidelines to send this defendant back to prison." *Id.*, at 149–150.

The Government again appealed Pepper's sentence, and the Court of Appeals again reversed and remanded for resentencing. See *United States* v. *Pepper*, 486 F. 3d 408, 410, 413 (CA8 2007) *(Pepper II)*. The court concluded that, while it was "a close call, [it could not] say the district court abused its discretion" by granting the 40 percent downward departure for substantial assistance. *Id.*, at 411. The court found the further 59 percent downward variance, however, to be an abuse of discretion. *Id.*, at 412–413. In doing so, the court held that Pepper's "post-sentencing rehabilitation was an impermissible factor to consider in granting a downward variance." *Id.*, at 413. The court stated that evidence of postsentencing rehabilitation "'is not relevant and will not be permitted at resentencing because the district court could not have considered that evidence at the time of the original sentencing,'" and permitting courts to consider post-sentencing rehabilitation at resentencing "would create unwarranted sentencing disparities and inject blatant inequities into the sentencing process." *Ibid.*[4] The Court of Appeals directed that the case be assigned to a different district judge for resentencing. *Ibid.*

After the Court of Appeals' mandate issued, Pepper's case was reassigned on remand to Chief Judge Linda R. Reade. In July 2007, Chief Judge Reade issued an order on the scope of the remand from *Pepper II*, stating that "[t]he court will not consider itself bound to reduce [Pep-

---

[4] The Court of Appeals also held that the District Court "further erred by considering Pepper's lack of violent history, which history had already been accounted for in the sentencing Guidelines calculation, and by considering sentencing disparity among Pepper's co-defendants without adequate foundation and explanation." *Pepper II*, 486 F. 3d, at 413.

per's] advisory Sentencing Guidelines range by 40% pursuant to USSG §5K1.1." *United States* v. *Pepper*, No. 03–CR–4113–LRR, 2007 WL 2076041, *4 (ND Iowa 2007). In the meantime, Pepper petitioned this Court for a writ of certiorari, and in January 2008, we granted the petition, vacated the judgment in *Pepper II*, and remanded the case to the Court of Appeals for further consideration in light of *Gall* v. *United States*, 552 U. S. 38 (2007). See *Pepper* v. *United States*, 552 U. S. 1089 (2008).

On remand, the Court of Appeals held that *Gall* did not alter its prior conclusion that "post-sentence rehabilitation is an impermissible factor to consider in granting a downward variance." 518 F. 3d 949, 953 (CA8 2008) *(Pepper III)*. The court again reversed the sentence and remanded for resentencing.

In October 2008, Chief Judge Reade convened Pepper's second resentencing hearing. Pepper informed the court that he was still attending school and was now working as a supervisor for the night crew at a warehouse retailer, where he was recently selected by management as "associate of the year" and was likely to be promoted the following January. App. 320, 323. Pepper also stated that he had recently married and was now supporting his wife and her daughter. *Id.*, at 321. Pepper's father reiterated that Pepper was moving forward in both his career and his family life and that he remained in close touch with his son. See *id.*, at 300–304.

In December 2008, Chief Judge Reade issued a sentencing memorandum. Noting that the remand language of *Pepper III* was nearly identical to the language in *Pepper II*, the court again observed that it was "not bound to reduce [Pepper's] advisory Sentencing Guidelines range by 40%" for substantial assistance and concluded that Pepper was entitled only to a 20 percent downward departure because the assistance was "timely, helpful and important" but "in no way extraordinary." Sealed Sentencing

Memorandum in No. 03–CR–4113–LRR (ND Iowa), Doc. 198, pp. 7, 10. The court also rejected Pepper's request for a downward variance based on, *inter alia*, his postsentencing rehabilitation. *Id.*, at 16.

The District Court reconvened Pepper's resentencing hearing in January 2009. The court's decision to grant a 20 percent downward departure for substantial assistance resulted in an advisory Guidelines range of 77 to 97 months. The court also granted the Government's motion under Rule 35(b) of the Federal Rules of Criminal Procedure to account for investigative assistance Pepper provided after he was initially sentenced. The court imposed a 65-month term of imprisonment, to be followed by 12 months of supervised release.[5]

The Court of Appeals affirmed Pepper's 65-month sentence. 570 F. 3d 958 (CA8 2009) *(Pepper IV)*. As relevant here, the Court of Appeals rejected Pepper's argument that the District Court erred in refusing to consider his postsentencing rehabilitation. The court acknowledged that "Pepper made significant progress during and following his initial period of imprisonment" and "commend[ed] Pepper on the positive changes he has made in his life," but concluded that Pepper's argument was foreclosed by Circuit precedent holding that "post-sentencing rehabilitation is not a permissible factor to consider in granting a downward variance." *Id.*, at 964–965 (citing *United States* v. *Jenners*, 473 F. 3d 894, 899 (CA8 2007); *United States* v. *McMannus*, 496 F. 3d 846, 852, n. 4 (CA8 2007)).

The Court of Appeals also rejected Pepper's claim that the scope of the remand and the law of the case from *Pepper II* and *Pepper III* required the District Court to

———————
[5] After the District Court resentenced Pepper to 65 months' imprisonment, Pepper was returned to federal custody. On July 22, 2010, after we granted Pepper's petition for a writ of certiorari, the District Court granted his motion for release pending disposition of the case here.

reduce the applicable Guidelines range by at least 40 percent pursuant to USSG §5K1.1. The court noted that its remand orders in *Pepper II* and *Pepper III* were "general remand[s] for resentencing," which "did not place any limitations on the discretion of the newly assigned district court judge in resentencing." 570 F. 3d, at 963. The court further noted that, although issues decided by an appellate court become law of the case on remand to the sentencing court, its earlier decisions merely held that a 40 percent downward departure for substantial assistance was not an abuse of discretion, not that the district court would be bound by the 40 percent departure previously granted. *Id.*, at 963–964.

We granted Pepper's petition for a writ of certiorari, 561 U. S. ___ (2010), to decide two questions: (1) whether a district court, after a defendant's sentence has been set aside on appeal, may consider evidence of a defendant's postsentencing rehabilitation to support a downward variance when resentencing the defendant, a question that has divided the Courts of Appeals;[6] and (2) whether the resentencing court was required, under the law of the case doctrine, to apply the same percentage departure from the Guidelines range for substantial assistance that had been applied at Pepper's prior sentencing. Because the United States has confessed error in the Court of Appeals' ruling on the first question, we appointed an *amicus curiae* to

––––––––––

[6] Compare, *e.g.*, *United States* v. *Lorenzo*, 471 F. 3d 1219, 1221 (CA11 2006) *(per curiam)* (precluding consideration of postsentencing rehabilitative conduct); *United States* v. *Sims*, 174 F. 3d 911, 913 (CA8 1999) (same), with *United States* v. *Lloyd*, 469 F. 3d 319, 325 (CA3 2006) (permitting consideration of postsentencing rehabilitation in exceptional cases); *United States* v. *Hughes*, 401 F. 3d 540, 560, n. 19 (CA4 2005) (instructing district court to adjust Guidelines calculation on remand "if new circumstances have arisen or events occurred since [defendant] was sentenced that impact the range prescribed by the guidelines").

defend the Court of Appeals' judgment.[7]  We now vacate the Eighth Circuit's ruling on the first question and affirm its ruling on the second.

## II

## A

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon* v. *United States*, 518 U. S. 81, 113 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams*, 337 U. S., at 247; see also *Pennsylvania ex rel. Sullivan* v. *Ashe*, 302 U. S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").

Consistent with this principle, we have observed that "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams*, 337 U. S., at 246.  In particular, we have emphasized that "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's

―――――――

[7]We appointed Adam G. Ciongoli to brief and argue the case, as *amicus curiae*, in support of the Court of Appeals' judgment. 561 U. S. \_\_\_ (2010).  Mr. Ciongoli has ably discharged his assigned responsibilities.

life and characteristics." *Id.*, at 247. Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Wasman* v. *United States*, 468 U. S. 559, 564 (1984).

In 1970, Congress codified the "longstanding principle that sentencing courts have broad discretion to consider various kinds of information" at 18 U. S. C. §3577 (1970 ed.). *United States* v. *Watts*, 519 U. S. 148, 151 (1997) *(per curiam)*. Section 3577 (1970 ed.) provided:

> "*No limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (Emphasis added.)

In the Sentencing Reform Act of 1984 (SRA), 18 U. S. C. §3551 *et seq.*, Congress effected fundamental changes to federal sentencing by creating the Federal Sentencing Commission and introducing the Guidelines scheme. In doing so, however, Congress recodified §3577 without change at §3661. The Sentencing Commission, moreover, expressly incorporated §3661 in the Guidelines:

> "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, *without limitation*, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U. S. C. §3661." USSG §1B1.4 (2010) (emphasis added).

Both Congress and the Sentencing Commission thus expressly preserved the traditional discretion of sentencing courts to "conduct an inquiry broad in scope, largely

unlimited either as to the kind of information [they] may consider, or the source from which it may come." *United States* v. *Tucker*, 404 U. S. 443, 446 (1972).[8]

The SRA did constrain sentencing courts' discretion in important respects, most notably by making the Guidelines mandatory, see 18 U. S. C. §3553(b)(1) (2000 ed., Supp. IV), and by specifying various factors that courts must consider in exercising their discretion, see §3553(a). In our seminal decision in *Booker*, we held that where facts found by a judge by a preponderance of the evidence increased the applicable Guidelines range, treating the Guidelines as mandatory in those circumstances violated the Sixth Amendment right of criminal defendants to be tried by a jury and to have every element of an offense proved by the Government beyond a reasonable doubt. 543 U. S., at 243–244. Our remedial opinion in *Booker* invalidated two offending provisions in the SRA, see *id.*, at 245 (invalidating 18 U. S. C. §§3553(b)(1), 3742(e)), and instructed the district courts to treat the Guidelines as "effectively advisory," 543 U. S., at 245.

Our post-*Booker* opinions make clear that, although a sentencing court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." *Kimbrough* v. *United States*, 552 U. S. 85, 101 (2007) (internal quotation marks and citation omitted). Accordingly, although the "Guidelines should be the starting point and the initial benchmark," district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in §3553(a), subject to appellate review for "reasonableness." *Gall*, 552 U. S., at 49–51. This

--------

[8] Of course, sentencing courts' discretion under §3661 is subject to constitutional constraints. See, *e.g.*, *United States* v. *Leung*, 40 F. 3d 577, 586 (CA2 1994) ("A defendant's race or nationality may play no adverse role in the administration of justice, including at sentencing").

sentencing framework applies both at a defendant's initial sentencing and at any subsequent resentencing after a sentence has been set aside on appeal.  See 18 U. S. C. §3742(g) ("A district court to which a case is remanded . . . shall resentence a defendant in accordance with section 3553"); see also *Dillon* v. *United States*, 560 U. S. ___, ___ (2010) (slip op., at 10) (distinguishing between "sentence-modification proceedings" under 18 U. S. C. §3582(c)(2), which "do not implicate the interests identified in *Booker*," and "plenary resentencing proceedings," which do).

B

In light of the federal sentencing framework described above, we think it clear that when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range.

Preliminarily, Congress could not have been clearer in directing that "[n]o limitation . . . be placed on the information concerning the background, character, and conduct" of a defendant that a district court may "receive and consider for the purpose of imposing an appropriate sentence."  18 U. S. C. §3661.  The plain language of §3661 makes no distinction between a defendant's initial sentencing and a subsequent resentencing after a prior sentence has been set aside on appeal.  We have recognized that "the broad language of §3661" does not provide "any basis for the courts to invent a blanket prohibition against considering certain types of evidence at sentencing." *Watts*, 519 U. S., at 152.  A categorical bar on the consideration of postsentencing rehabilitation evidence would directly contravene Congress' expressed intent in §3661.

In addition, evidence of postsentencing rehabilitation may be highly relevant to several of the §3553(a) factors

that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of postsentencing rehabilitation may plainly be relevant to "the history and characteristics of the defendant." §3553(a)(1). Such evidence may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in §3553(a)(2)—in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." §§3553(a)(2)(B)–(D); see *McMannus*, 496 F. 3d, at 853 (Melloy, J., concurring) ("In assessing . . . deterrence, protection of the public, and rehabilitation, 18 U. S. C. §3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct"). Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under §3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in §3553(a)(2).

As the original sentencing judge recognized, the extensive evidence of Pepper's rehabilitation since his initial sentencing is clearly relevant to the selection of an appropriate sentence in this case. Most fundamentally, evidence of Pepper's conduct since his release from custody in June 2005 provides the most up-to-date picture of Pepper's "history and characteristics." §3553(a)(1); see *United States* v. *Bryson*, 229 F. 3d 425, 426 (CA2 2000) ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing"). At the time of his initial sentencing in 2004, Pepper was a 25-year-old drug addict who was unemployed, estranged from his family, and had recently sold drugs as part of a methamphetamine conspiracy. By the time of his second resentencing in 2009, Pepper had been drug-free for

nearly five years, had attended college and achieved high
grades, was a top employee at his job slated for a promo-
tion, had re-established a relationship with his father, and
was married and supporting his wife's daughter. There is
no question that this evidence of Pepper's conduct since
his initial sentencing constitutes a critical part of the
"history and characteristics" of a defendant that Congress
intended sentencing courts to consider. §3553(a).

Pepper's postsentencing conduct also sheds light on the
likelihood that he will engage in future criminal conduct, a
central factor that district courts must assess when impos-
ing sentence. See §§3553(a)(2)(B)–(C); *Gall*, 552 U. S., at
59 ("Gall's self-motivated rehabilitation . . . lends strong
support to the conclusion that imprisonment was not
necessary to deter Gall from engaging in future criminal
conduct or to protect the public from his future criminal
acts" (citing §§3553(a)(2)(B)–(C))). As recognized by Pep-
per's probation officer, Pepper's steady employment, as
well as his successful completion of a 500-hour drug
treatment program and his drug-free condition, also
suggest a diminished need for "educational or vocation-
al training . . . or other correctional treatment."
§3553(a)(2)(D). Finally, Pepper's exemplary postsentenc-
ing conduct may be taken as the most accurate indicator of
"his present purposes and tendencies and significantly to
suggest the period of restraint and the kind of discipline
that ought to be imposed upon him." *Ashe*, 302 U. S., at
55. Accordingly, evidence of Pepper's postsentencing
rehabilitation bears directly on the District Court's over-
arching duty to "impose a sentence sufficient, but not
greater than necessary" to serve the purposes of sentenc-
ing. §3553(a).

In sum, the Court of Appeals' ruling prohibiting the
District Court from considering any evidence of Pepper's
postsentencing rehabilitation at resentencing conflicts
with longstanding principles of federal sentencing law and

contravenes Congress' directives in §§3661 and 3553(a).

## C

*Amicus* nevertheless advances two principal arguments in defense of the Court of Appeals' ruling: (1) 18 U. S. C. §3742(g)(2), which restricts the discretion of a resentencing court on remand to impose a non-Guidelines sentence, effectively forecloses consideration of a defendant's post-sentencing rehabilitation; and (2) permitting district courts to consider postsentencing rehabilitation would defeat Congress' objectives under §3553(a). We are not persuaded.

### 1

*Amicus'* main argument relies on 18 U. S. C. §3742(g)(2), a provision that the Court of Appeals did not cite below. That provision states that when a sentence is set aside on appeal, the district court to which the case is remanded:

> "shall not impose a sentence outside the applicable guidelines range except upon a ground that—
>
> "(A) was specifically and affirmatively included in the written statement of reasons required by section 3553(c) in connection with the previous sentencing of the defendant prior to the appeal; and
>
> "(B) was held by the court of appeals, in remanding the case, to be a permissible ground of departure."

In operation, §3742(g)(2) restricts the discretion of a district court on remand by precluding the court from imposing a sentence outside the Guidelines range except upon a "ground of departure" that was expressly relied upon in the prior sentencing and upheld on appeal. *Amicus* thus correctly contends that, on its face, §3742(g)(2) effectively forecloses a resentencing court from considering evidence of a defendant's postsentencing rehabilitation for purposes of imposing a non-Guidelines sentence because, as a practical matter, such evidence did not exist at the time of the

prior sentencing. As the Government concedes, however, §3742(g)(2) is invalid after *Booker*.

As we have explained, *Booker* held that where judicial factfinding increases a defendant's applicable Sentencing Guidelines range, treating the Guidelines as mandatory in those circumstances would violate the defendant's Sixth Amendment right to be tried by a jury and to have every element of an offense proved by the Government beyond a reasonable doubt. See *supra*, at 11. We recognized in *Booker* that, although the SRA permitted departures from the applicable Guidelines range in limited circumstances,[9] "departures are not available in every case, and in fact are unavailable in most." 543 U. S., at 234. Because in those instances, "the judge is bound to impose a sentence within the Guidelines range," we concluded that the availability of departures in certain circumstances "does not avoid the constitutional issue." *Ibid.*

To remedy the constitutional problem, we rendered the Guidelines effectively advisory by invalidating two provisions of the SRA: 18 U. S. C. §3553(b)(1) (2000 ed., Supp. IV), which generally required sentencing courts to impose a sentence within the applicable Guidelines range, and §3742(e) (2000 ed. and Supp. IV), which prescribed the standard of appellate review, including *de novo* review of Guidelines departures. 543 U. S., at 259. We invalidated these provisions even though we recognized that mandatory application of the Guidelines would not always result in a Sixth Amendment violation.[10] Indeed, although the

---

[9] See 18 U. S. C. §3553(b)(1) (2000 ed., Supp. IV) (permitting departures where the judge "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission").

[10] For example, in the pre-*Booker* regime, if the applicable Guidelines range depended solely on facts found by a jury beyond a reasonable doubt, requiring a judge to sentence within that range would not run afoul of the Sixth Amendment.

Government suggested in *Booker* that we render the Guidelines advisory only in cases in which the Constitution prohibits judicial factfinding, we rejected that two-track proposal, reasoning that "Congress would not have authorized a mandatory system in some cases and a non-mandatory system in others, given the administrative complexities that such a system would create." *Id.*, at 266; see *Dillon*, 560 U. S., at \_\_\_ (slip op., at 12) ("The incomplete remedy we rejected in *Booker* would have required courts to treat the Guidelines differently in similar proceedings, leading potentially to unfair results and considerable administrative challenges").

We did not expressly mention §3742(g)(2) in *Booker*,[11] but the rationale we set forth in that opinion for invalidating §§3553(b)(1) and 3742(e) applies equally to §3742(g)(2). As with those provisions, §3742(g)(2) requires district courts effectively to treat the Guidelines as mandatory in an entire set of cases. Specifically, §3742(g)(2) precludes a district court on remand from imposing a sentence "outside the applicable guidelines range" except upon a "ground of departure" that was expressly relied upon by the court at the prior sentencing and upheld by the court of appeals. In circumstances in which the district court did not rely upon such a departure ground at the prior sentencing, §3742(g)(2) would require the court on remand to impose a sentence within the applicable Guidelines range, thus rendering the Guidelines effectively mandatory. Because in a large set of cases, judicial factfinding will increase the applicable Guidelines range beyond that supported solely by the facts established by the jury verdict (or guilty plea), requiring a sentencing judge on re-

—————

[11] See *Dillon*, 560 U. S., at \_\_\_, n. 5 (Stevens, J., dissenting) (slip op., at 9, n. 5) (citing §3742(g)(2) as "one additional provision of the [SRA that] should have been excised, but was not, in order to accomplish the Court's remedy").

mand to apply the Guidelines range, as §3742(g)(2) does, will often result in a Sixth Amendment violation for the reasons we explained in *Booker*. Accordingly, as with the provisions in *Booker*, the proper remedy here is to invalidate §3742(g)(2).

The sentencing proceeding at issue in *Booker* itself illustrates why §3742(g)(2) cannot withstand Sixth Amendment scrutiny. The district court in *Booker* increased the defendant's then-mandatory Guidelines range based on a drug-quantity finding that it, rather than the jury, made. 543 U. S., at 227. After we held that the Guidelines must be treated as advisory, we remanded the case for resentencing. *Id.*, at 267. Had §3742(g)(2) remained valid after *Booker*, the district court on remand would have been required to sentence within the Guidelines range because it did not depart from the Guidelines at the original sentencing. Accordingly, the resentencing judge in *Booker* would have been required under §3742(g)(2) to impose a Guidelines sentence based on judge-found facts concerning drug quantity, the precise result that *Booker* forbids.

The same result would occur in any sentencing in which a district court erroneously refuses to impose a sentence outside the Guidelines range "based on a misunderstanding of its authority to depart under or vary from the Guidelines." Reply Brief for United States 16. For example, if §3742(g)(2) remained valid, there would be no remedy at resentencing if a district court erroneously believed the Guidelines were presumptively reasonable, see *Nelson* v. *United States*, 555 U. S. \_\_\_, \_\_\_ (2009) *(per curiam)* (slip op., at 2), or if it mistakenly thought that a non-Guidelines sentence required extraordinary circumstances, see *Gall*, 552 U. S., at 47, or if it incorrectly concluded that it could not vary from the Guidelines based on a policy disagreement with their disparate treatment of crack and powder cocaine, see *Kimbrough*, 552 U. S., at

101. In such cases, the district court at the initial sentencing proceeding will necessarily have imposed a sentence within the Guidelines range, and thus §3742(g)(2) would require the imposition of a Guidelines sentence on remand. See Reply Brief for Petitioner 3–5 (describing further categories of cases where "the *Booker* remedy would be entirely unavailable if §3742(g)(2) were valid").

To be sure, applying §3742(g)(2) at resentencing would not always result in a Sixth Amendment violation. For example, where the applicable Guidelines range rests solely on facts found by a jury beyond a reasonable doubt, application of §3742(g)(2) at resentencing would not render the sentence constitutionally infirm. But, as explained above, that possibility was equally true with respect to the sentencing provisions we invalidated in *Booker*. See *supra*, at 16. As with those provisions, "we cannot assume that Congress, if faced with the statute's invalidity in key applications, would have preferred to apply the statute in as many other instances as possible." 543 U. S., at 248. Just as we rejected a two-track system in *Booker* that would have made the Guidelines mandatory in some cases and advisory in others, we reject a partial invalidation of §3742(g)(2) that would leave us with the same result.

The fact that §3742(g)(2) permits a resentencing court on remand to impose a non-Guidelines sentence in cases where the prior sentence expressly relied upon a departure upheld by the court of appeals also does not cure the constitutional infirmity. As explained above, we observed in *Booker* that the availability of departures from the applicable Guidelines ranges in specified circumstances "does not avoid the constitutional issue." *Id.*, at 234. Because "departures are not available in every case, and in fact are unavailable in most," *ibid.*, we held that remedying the Sixth Amendment problem required invalidation of §3553(b)(1). That same remedial approach requires us

to invalidate §3742(g)(2).[12]

*Amicus* contends that any constitutional infirmity in §3742(g)(2) can be remedied by invalidating §3742(j)(1)(B) rather than §3742(g)(2). Brief for *Amicus Curiae* in Support of Judgment Below 21–22. Section 3742(j)(1)(B) provides that a "ground of departure" is "permissible" for purposes of §3742(g)(2)(B) only if it is, *inter alia*, "authorized under section 3553(b)." In *Booker*, we noted that "statutory cross-references" to the SRA provisions we invalidated were also constitutionally infirm. 543 U. S., at 259. Because §3742(j)(1)(B) incorporates a cross-reference to §3553(b)(1), one of the provisions we invalidated in *Booker*, *amicus* suggests that invalidating §3742(j)(1)(B) would cure any constitutional defect in §3742(g)(2)(B). As the Government explains, however, even if §3742(j)(1)(B) were invalidated and a district court could depart on any ground at an initial sentencing, the district court would not be able to depart on any new ground at resentencing so long as §3742(g)(2) remains in force. Because *amicus*' proposed solution would still result in the Guidelines being effectively mandatory at resentencing in an entire set of cases, it fails to remedy the fundamental constitutional defect of §3742(g)(2).

––––––––––––

[12] *Amicus* National Association of Criminal Defense Lawyers (NACDL) argues that, because §3742(g)(2)(B) permits a non-Guidelines sentence only with respect to certain "departures," that provision "appears to preclude sentencing courts on remand from granting any and all *variances* under Section 3553(a)." Brief for NACDL as *Amicus Curiae* 11 (emphasis added). In *Irizarry* v. *United States*, 553 U. S. 708 (2008), we held that a "'[d]eparture' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines"; in contrast, a "variance" refers to a non-Guidelines sentence outside the Guidelines framework. *Id.*, at 714. *Irizarry*'s holding construed the term "departure" in Rule 32(h) of the Federal Rules of Criminal Procedure. Because we conclude that §3742(g)(2) is constitutionally infirm and must be invalidated, we need not decide whether its reference to "departure[s]" includes variances.

2

*Amicus*' next cluster of arguments focuses on Congress' sentencing objectives under §3553(a). Preliminarily, *amicus* contends that even if §3742(g)(2) is constitutionally invalid, that provision reflects a congressional policy determination that only information available at the time of original sentencing should be considered, and that this policy determination should inform our analysis of whether §3553(a) permits consideration of postsentencing rehabilitation evidence. This argument, however, is based on a faulty premise.

Contrary to *amicus*' contention, §3742(g)(2) does not reflect a congressional purpose to preclude consideration of evidence of postsentencing rehabilitation at resentencing. To be sure, §3742(g)(2) has the incidental effect of limiting the weight a sentencing court may place on post-sentencing rehabilitation by precluding the court from resentencing outside the Guidelines range on a "ground of departure" on which it did not previously rely. But on its face, nothing in §3742(g)(2) prohibits a district court from considering postsentencing developments—including postsentencing rehabilitation—in selecting a sentence *within* the applicable Guidelines range. Section 3742(g)(2) also does not apply to resentencings that occur for reasons other than when a sentence is overturned on appeal and the case is remanded (*e.g.*, when a sentence is set aside on collateral review under 28 U. S. C. §2255). In such circumstances, §3742(g)(2) does not restrict a district court at all, much less with respect to consideration of postsentencing developments. Accordingly, because we see no general congressional policy reflected in §3742(g)(2) to preclude resentencing courts from considering postsentencing information,[13] that provision has no bearing on our analy-

--------

[13] For those of us for whom it is relevant, the legislative history of §3742(g)(2) confirms that the provision, enacted as part of the

sis of whether §3553(a) permits consideration of evidence of postsentencing rehabilitation.

As we explained above, evidence of postsentencing rehabilitation may be highly relevant to several of the sentencing factors that Congress has specifically instructed district courts to consider. See *supra*, at 13–15 (discussing §§3553(a), (a)(1), (a)(2)(B)–(D)). *Amicus*, however, argues that consideration of postsentencing rehabilitation is inconsistent with two sentencing factors: §3553(a)(5), which directs sentencing courts to consider "any pertinent policy statement" of the Sentencing Commission, and §3553(a)(6), which requires courts to consider "the need to avoid unwarranted sentenc[ing] disparities among defendants with similar records who have been found guilty of similar conduct."

With regard to §3553(a)(5), *amicus* points to the Sentencing Commission's policy statement in USSG §5K2.19, which provides that "[p]ost-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense[,] are not an appropriate basis for a downward departure when resentencing the defendant for that offense." According to *amicus*, that policy statement is "clear and unequivocal," and as an exercise of the Sentencing Commission's "core function," should be given effect.

———————

PROTECT Act of 2003, §401(e), 117 Stat. 671, was not aimed at prohibiting district courts from considering postsentencing developments. Rather, it was meant to ensure that under the then-mandatory Guidelines system, when a particular departure was reversed on appeal, the district court could not impose the same sentence on remand on the basis of a different departure. See H. R. Conf. Rep. No. 108–66, pp. 58–59 (2003) (noting that §401 of the PROTECT Act, *inter alia*, "prevent[s] sentencing courts, upon remand, from imposing the same illegal departure on a different theory"). Like the provisions invalidated in *Booker*, then, the purpose of §3742(g)(2) was "to make Guidelines sentencing even more mandatory than it had been." 543 U. S. 220, 261 (2005). As we recognized in *Booker*, that purpose has "ceased to be relevant." *Ibid.*

Brief for *Amicus Curiae* in Support of Judgment Below 31–32.

To be sure, we have recognized that the Commission post-*Booker* continues to "fil[l] an important institutional role" because "[i]t has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough*, 552 U. S., at 109 (internal quotation marks omitted). Accordingly, we have instructed that district courts must still give "respectful consideration" to the now-advisory Guidelines (and their accompanying policy statements). *Id.*, at 101. As *amicus* acknowledges, however, our post-*Booker* decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views. See *id.*, at 109–110. That is particularly true where, as here, the Commission's views rest on wholly unconvincing policy rationales not reflected in the sentencing statutes Congress enacted.

The commentary to USSG §5K2.19 expresses the Commission's view that departures based on postsentencing rehabilitation would "(1) be inconsistent with the policies established by Congress under 18 U. S. C. §3624(b) [governing good time credit] and other statutory provisions for reducing the time to be served by an imprisoned person; and (2) inequitably benefit only those who gain the opportunity to be resentenced *de novo*." With regard to the first proffered rationale, a sentencing reduction based on post-sentencing rehabilitation can hardly be said to be "inconsistent with the policies" underlying an award of good time credit under §3624(b) because the two serve distinctly different penological interests.[14] Indeed, the difference

_____

[14] An award of good time credit by the Bureau of Prisons (BOP) does not affect the length of a court-imposed sentence; rather, it is an administrative reward "to provide an incentive for prisoners to 'compl[y] with

between the two is reflected most obviously in the fact that the BOP has no authority to award good time credit where, as in this case, the defendant's good behavior occurs after a sentence has already been served.[15] The Commission's second proffered rationale fares no better. To be sure, allowing district courts to consider evidence of postsentencing rehabilitation may result in disparate treatment between those defendants who are sentenced properly and those who must be resentenced. But that disparity arises not because of arbitrary or random sentencing practices, but because of the ordinary operation of appellate sentencing review.

In a closely related vein, *amicus* argues that consideration of postsentencing rehabilitation is inconsistent with §3553(a)(6), which requires sentencing courts to consider the need to avoid unwarranted sentencing disparities.

———————

institutional disciplinary regulations.'" *Barber* v. *Thomas*, 560 U. S. ___, ___ (2010) (slip op., at 7) (quoting 18 U. S. C. §3624(b); alteration in original). Such credits may be revoked at any time before the date of a prisoner's release. See §3624(b)(2). In contrast, a court's imposition of a reduced sentence based on postsentencing rehabilitation changes the very terms of imprisonment and "recognizes that the [defendant's] conduct since his initial sentencing warrants a less severe criminal punishment." Brief for United States 50. Once imposed, a sentence may be modified only in very limited circumstances. See §3582(c).

[15] *Amicus* points to two other procedural mechanisms that may shorten a defendant's sentence—early termination of a term of supervised release, see §3583(e)(1), and the potential for sentencing reductions based on postsentencing substantial assistance, see Fed. Rule Crim. Proc. 35(b)—but neither presents an adequate substitute for a district court's consideration of postsentencing rehabilitation. Supervised release follows a term of imprisonment and serves an entirely different purpose than the sentence imposed under §3553(a). See *United States* v. *Johnson*, 529 U. S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration"). Rule 35(b) departures address only postsentencing cooperation with the Government, not postsentencing rehabilitation generally, and thus a defendant with nothing to offer the Government can gain no benefit from Rule 35(b).

The Court of Appeals also rested its holding on this ground, reasoning that "'allowing [postsentencing reha-bilitation] evidence to influence [defendant's] sentence would be grossly unfair to the vast majority of defendants who receive no sentencing-court review of any positive post-sentencing rehabilitative efforts.'" 570 F. 3d, at 965 (quoting *McMannus*, 496 F. 3d, at 852, n. 4). But *amicus* points to no evidence, nor are we aware of any, suggesting that Congress enacted §3553(a)(6) out of a concern with disparities resulting from the normal trial and sentencing process.[16] The differences in procedural opportunity that may result because some defendants are inevitably sen-tenced in error and must be resentenced are not the kinds of "unwarranted" sentencing disparities that Congress sought to eliminate under §3553(a)(6). Cf. *United States* v. *LaBonte*, 520 U. S. 751, 761–762 (1997) (disparity arising from exercise of prosecutorial discretion not unwarranted); *United States* v. *Rhodes*, 145 F. 3d 1375, 1381 (CADC 1998) ("Distinguishing between prisoners whose convic-tions are reversed on appeal and all other prisoners hardly seems 'unwarranted'").

As the Government explains, moreover, the logic of the Court of Appeals' approach below—*i.e.*, that "post-sentence rehabilitation is not relevant . . . because the district court could not have considered that evidence at the time of the original sentencing," 570 F. 3d, at 965 (internal quotation marks omitted)—would require sentencing courts cate-

_____

[16] Indeed, some defendants will have a longer period of time between initial custody and trial, or between trial and sentencing, and those defendants—particularly if they are released on bail—will have a greater opportunity to demonstrate postoffense, presentencing rehabili-tation. Even before *Booker*, the lower courts uniformly held that evidence of such rehabilitation could provide a basis for departing from the applicable Guidelines. See USSG App. C, Amdt. 602, comment., p. 74 (Nov. 2003) ("[D]epartures based on extraordinary post-offense rehabilitative efforts prior to sentencing . . . have been allowed by every circuit that has ruled on the matter").

gorically to ignore not only postsentencing rehabilitation, but *any* postsentencing information, including, for example, evidence that a defendant had committed postsentencing offenses. Our precedents, however, provide no basis to support such a categorical bar. See, *e.g.*, *Wasman*, 468 U. S., at 572 ("[A] sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings"); cf. *North Carolina* v. *Pearce*, 395 U. S. 711, 723 (1969). Indeed, even the Court of Appeals below does not accept the logical consequence of its approach as it permits district courts to consider postsentencing conduct that would support a higher sentence. See *United States* v. *Stapleton*, 316 F. 3d 754, 757 (CA8 2003). Nothing in §§3553(a) and 3661, however, remotely suggests that Congress intended district courts to consider only postsentencing evidence detrimental to a defendant while turning a blind eye to favorable evidence of a defendant's postsentencing rehabilitation. Cf. *United States* v. *Jones*, 460 F. 3d 191, 196 (CA2 2006) ("Obviously, the discretion that *Booker* accords sentencing judges to impose non-Guidelines sentences cannot be an escalator that only goes up").

Finally, we note that §§3553(a)(5) and (a)(6) describe only two of the seven sentencing factors that courts must consider in imposing sentence. At root, *amicus* effectively invites us to elevate two §3553(a) factors above all others. We reject that invitation. See *Gall*, 552 U. S., at 49–50 (instructing sentencing courts to "consider *all* of the §3553(a) factors" (emphasis added)).

D

For the reasons stated above, we hold that the Court of Appeals erred in categorically precluding the District Court from considering evidence of Pepper's postsentencing rehabilitation after his initial sentence was set aside

on appeal. District courts post-*Booker* may consider evidence of a defendant's postsentencing rehabilitation at resentencing and such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range.[17]

The Government informs us that, in granting Pepper's motion for release pending disposition of this appeal, see n. 5, *supra*, the District Court stated that it would not have exercised its discretion to grant Pepper a downward variance based on postsentencing rehabilitation. That statement, however, was made in light of the Court of Appeals' erroneous views regarding postsentencing rehabilitation evidence. Because we expressly reject those views today, it is unclear from the record whether the District Court would have imposed the same sentence had it properly considered the extensive evidence of Pepper's postsentencing rehabilitation. On remand, the District Court should consider and give appropriate weight to that evidence, as well as any additional evidence concerning Pepper's conduct since his last sentencing in January 2009. Accordingly, we vacate the Eighth Circuit's judgment in respect to Pepper's sentence and remand the case for resentencing consistent with this opinion.

## III

The second question presented in this case merits only a brief discussion. As noted above, the original sentencing judge in this case granted Pepper a 40 percent downward departure pursuant to USSG §5K1.1 based on Pepper's

---

[17] Of course, we do not mean to imply that a district court must reduce a defendant's sentence upon any showing of postsentencing rehabilitation. Nor do we mean to preclude courts of appeals from issuing limited remand orders, in appropriate cases, that may render evidence of postsentencing rehabilitation irrelevant in light of the narrow purposes of the remand proceeding. See, *e.g.*, *United States* v. *Bernardo Sanchez*, 569 F. 3d 995, 1000 (CA9 2009).

substantial assistance and sentenced him to 24 months' imprisonment. When the Court of Appeals vacated that sentence in *Pepper II*, and again in *Pepper III*, the case was reassigned on remand to Chief Judge Reade. In resentencing Pepper, Chief Judge Reade ruled that she was not bound by the prior sentencing judge's decision to grant a 40 percent downward departure and instead granted only a 20 percent downward departure, which the Court of Appeals upheld in *Pepper IV*. Pepper argues that the law of the case doctrine required Chief Judge Reade to apply the same 40 percent departure granted by the original sentencing judge. We disagree.

Preliminarily, we note that the mandates in *Pepper II* and *Pepper III* were "general remand[s] for resentencing," which "did not place any limitations on the discretion of the newly assigned district court judge in resentencing Pepper." 570 F. 3d, at 963. In his merits briefs to this Court, Pepper does not challenge the scope or validity of the Court of Appeals' mandate ordering *de novo* resentencing, and thus has abandoned any argument that the mandate itself restricted the District Court from imposing a different substantial assistance departure.[18] The only question before us is whether the law of the case doctrine required Chief Judge Reade to adhere to the original sentencing judge's decision granting a 40 percent downward departure.

Although we have described the "law of the case [a]s an amorphous concept," "[a]s most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same

---

[18] In any event, as the Court of Appeals recognized, neither *Pepper II* nor *Pepper III* held that a 40 percent downward departure was the only reasonable departure that a sentencing court could grant for Pepper's substantial assistance; rather, the only issue those opinions actually decided was that a "40% downward departure was not an abuse of discretion." 570 F. 3d, at 963–964.

issues in subsequent stages in the same case." *Arizona* v. *California*, 460 U. S. 605, 618 (1983). This doctrine "directs a court's discretion, it does not limit the tribunal's power." *Ibid.* Accordingly, the doctrine "does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" *Agostini* v. *Felton*, 521 U. S. 203, 236 (1997) (quoting *Arizona*, 460 U. S., at 618, n. 8; alteration in original).

Pepper argues that, because the original sentencing judge's decision to grant the 40 percent departure was never set aside by the Court of Appeals or this Court, it constituted the law of the case. As such, Pepper contends that Chief Judge Reade should not have disturbed that ruling absent "compelling justification" for overturning it. Brief for Petitioner 56. According to Pepper, because Chief Judge Reade identified no such justification, the law of the case doctrine required her to adhere to the 40 percent departure granted by the original sentencing judge.

As the Government explains, however, the Court of Appeals in *Pepper III* set aside Pepper's entire sentence and remanded for a *de novo* resentencing. See 518 F. 3d, at 949, 953. Thus, even assuming, *arguendo*, that the original sentencing court's decision to impose a 40 percent departure was at one point law of the case, *Pepper III* effectively wiped the slate clean. To be sure, *Pepper III* vacated Pepper's 24-month sentence on grounds unrelated to the substantial assistance departure, but that fact does not affect our conclusion. "A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." *United States* v. *Stinson*, 97 F. 3d 466, 469 (CA11 1996) *(per curiam)*. Because a district court's "original sentencing intent may be undermined by altering one portion of the calculus," *United States* v. *White*, 406 F. 3d 827, 832 (CA7 2005), an appellate court when reversing one part of a defendant's sentence "may vacate the entire sentence . . . so that, on

remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U. S. C. §3553(a)," *Greenlaw* v. *United States*, 554 U. S. 237, 253 (2008). That is precisely what the Eighth Circuit did here.

Accordingly, because the Court of Appeals in *Pepper III* remanded for *de novo* resentencing, we conclude that Chief Judge Reade was not bound by the law of the case doctrine to apply the same 40 percent departure that had been applied at Pepper's prior sentencing.

*          *          *

For the reasons stated above, the judgment of the United States Court of Appeals for the Eighth Circuit is vacated in part and affirmed in part, and the case is remanded for resentencing consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

———————

No. 09–6822

———————

## JASON PEPPER, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[March 2, 2011]

JUSTICE BREYER, concurring in part and concurring in
the judgment.

I join Part III of the Court's opinion as to the second
question presented. As to the first question presented,
I agree with the Court's conclusion. And I agree with
its opinion to the extent that it is consistent with this
concurrence.

Like the majority, I believe *Booker* requires us to hold
18 U. S. C. §3742(g)(2) unconstitutional. See *ante,* at 15–
21; *United States* v. *Booker*, 543 U. S. 220 (2005); see also
*Apprendi* v. *New Jersey*, 530 U. S. 466 (2000). And, like
the majority, I believe that the law does not require a
sentencing court to follow a Guideline policy statement
that forbids taking account of postsentencing rehabilita-
tion. United States Sentencing Commission, Guidelines
Manual §5K2.19 (Nov. 2010) (USSG). I would emphasize,
however, that this conclusion does not leave a sentencing
court free to disregard the Guidelines at will. To the
contrary, the law permits the court to disregard the Guide-
lines only where it is "reasonable" for a court to do so.
*Booker*, *supra,* at 261–262; *Gall* v. *United States*, 552 U. S.
38, 51–52 (2007); *Kimbrough* v. *United States*, 552 U. S.
85, 109 (2007). And an appellate court must be guided by
the basic sentencing objectives of the statutes that create
the Guidelines in determining whether, in disregarding the
Guidelines, the sentencing court has acted unreasonably.

## I

The Guideline in question consists of a policy statement that sets forth an exception to normal Guideline rules. Normally, the Guidelines authorize a sentencing judge to consider a departure from an ordinary Guidelines sentence in any case "where conduct significantly differs from the norm" to which "a particular guideline linguistically applies." USSG ch. 1, pt. A1, §4(b) (discussing the Guidelines' general approach to departures). The policy statement at issue is one of a handful of Guideline rules that nonetheless forbid departure. It says that a defendant's "[p]ost-sentencing rehabilitative efforts, even if exceptional, . . . are not an appropriate basis for a downward departure when resentencing." USSG §5K2.19. The policy statement thereby adds "Post-Sentencing Rehabilitative Efforts" to such factors as race, sex, national origin, creed, religion, and socioeconomic status, which the Guidelines absolutely prohibit the sentencing judge from taking into account. USSG ch. 1, pt. A1, §4(b).

## II

Can a sentencing court, despite this policy statement, take account of postsentencing rehabilitation in the particular circumstances that this case presents? I cannot find the answer to this question in the language of the sentencing statutes, in sentencing traditions, in the pre-Guidelines case of *Williams* v. *New York*, 337 U. S. 241 (1949), or in this Court's use of the word "advisory." As the majority points out, a sentencing statute forbids any "'limitation'" on the "'information concerning the background, character, and conduct'" that "'a court . . . may . . . consider.'" *Ante*, at 10 (quoting 18 U. S. C. §3661 (emphasis deleted)). But this provision must refer to all *relevant* information. See USSG §1B1.4 and comment. (generally incorporating §3661, but noting that there are certain factors that should not be considered for any purpose). *If*

the Guideline policy statement's absolute prohibition on consideration of postsentencing rehabilitation were legally binding, then information on that score (like information about race, religion, sex, or national origin) would fall outside the scope of this provision, for it would not be *relevant*. Thus, reference to the statute begs the question.

Nor can I find much help in the majority's reference to a sentencing "'tradition'" that considers "'every convicted person as an individual.'" *Ante*, at 9 (quoting *Koon* v. *United States*, 518 U. S. 81, 113 (1996)). That is because individualized sentencing is not the only relevant tradition. A just legal system seeks not only to treat different cases differently but also to treat like cases alike. Fairness requires sentencing uniformity as well as efforts to recognize relevant sentencing differences. Indeed, when Congress enacted the sentencing statutes before us, it focused upon the unfair way in which federal sentencing failed to treat similar offenders similarly. And Congress wrote statutes designed primarily (though not exclusively) to bring about greater uniformity in sentencing. See, *e.g., Booker, supra,* at 253–254. The statutes do so in large part through the creation of a system of Guidelines written by a Sentencing Commission, which Congress intended the courts to follow. See *Mistretta* v. *United States*, 488 U. S. 361 (1989) (Sentencing Commission constitutional); *Rita* v. *United States*, 551 U. S. 338, 348–349 (2007); 18 U. S. C. §3553(a) (identifying relevant factors in sentencing, including uniformity).

The *Williams* case is similarly unhelpful. That is because Congress in the Sentencing Reform Act of 1984—the law before us—disavowed the individualized approach to sentencing that that case followed. *Williams* emphasized the importance of a sentencing court's legal power to tailor punishment ability to fit the circumstances of each individual offender. 337 U. S., at 247 (emphasizing "modern concepts individualizing punishment"). But Congress,

concerned that individualized sentencing had gone too far, wrote a new sentencing law designed to help correct "disparities" among similar defendants sentenced by different judges. See S. Rep. No. 98–225, p. 45 (1983) ("Sentencing disparities" are "unfair both to offenders and to the public"); *id.,* at 38 (disparities "can be traced directly to the unfettered discretion the law confers on those judges and parole authorities responsible for imposing and implementing the sentence").

*Booker*'s description of the Guidelines as "advisory" offers somewhat greater assistance—but only if that word is read in light of the Sixth Amendment analysis that precedes it. This Court has held that the Sixth Amendment forbids Congress (through the Commission) to create Guidelines that both (1) require judges (without juries) to find sentencing facts and also (2) tie those facts to the mandatory imposition of particular sentences. 543 U. S., at 226, 244; see also *Apprendi*, 530 U. S., at 490 (Sixth Amendment requires jury findings in respect to factual matters that require judge to increase sentence); *Blakely* v. *Washington*, 542 U. S. 296, 303–304 (2004) (same in respect to a State's mandatory guidelines). In light of this Sixth Amendment prohibition, the Court, believing that Congress would not have intended to introduce new juries into each sentencing proceeding, excised the few particular provisions of the sentencing statutes that specified that application of the Guidelines was mandatory. *Booker*, 543 U. S., at 259. The Court believed that the relevant statutes remained workable without those few provisions, that their excision could further Congress' basic sentencing intentions, and that excision was more likely to do so than invalidation of the entire statutory scheme. With an occasional exception (such as the statutory provision we strike down today), there is no reason to think that the sentencing statutes as limited in *Booker* run afoul of the Sixth Amendment. *Ibid.*

*Booker* made clear that the remaining statutory provisions, while leading us to call the Guidelines "advisory" (rather than "mandatory"), do not give a sentencing judge *carte blanche* to apply, or not to apply, the Guidelines as that judge chooses. Rather, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.,* at 264. Moreover, *Booker* held that appellate court review of sentencing is valid. *Booker* explained that the "statutory language, the structure of the [Sentencing Reform Act], and the sound administration of justice," taken together, require appellate courts to apply "reasonableness standard[s]" of review. *Id.,* at 260–261, 262 (internal quotation marks omitted). Reasonableness standards, we added, are "not foreign to sentencing law." *Id.*, at 262. And the "Act has long required their use in important sentencing circumstances—both on review of departures . . . and on review of sentences imposed where there was no applicable Guideline." *Ibid.* See also *id.,* at 261 (appellate courts will apply "a practical standard of review already familiar to appellate courts: review for 'unreasonable[ness]'"); *id.,* at 264 ("[C]ourts of appeals" will "review sentencing decisions for unreasonableness").

We have also indicated that, in applying reasonableness standards, the appellate courts should take account of sentencing policy as embodied in the statutes and Guidelines, as well as of the comparative expertise of trial and appellate courts. Thus, in *Kimbrough*, we observed that in light of the "discrete institutional strengths" of the Sentencing Commission and sentencing judges, "a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply.'" 552 U. S., at 109 (quoting *Rita*, *supra*, at 351). We noted, however, that "while the Guidelines are no longer binding,

closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect §3553(a) considerations' even in a mine-run case." 552 U. S., at 109.

### III

Unlike the majority, I would decide the question *Kimbrough* left open. And I would follow its suggested framework for evaluating "reasonableness." As *Kimbrough* suggests, doing so takes proper account of the comparative institutional abilities of trial courts, appellate courts, and the Sentencing Commission. The trial court typically better understands the individual circumstances of particular cases before it, while the Commission has comparatively greater ability to gather information, to consider a broader national picture, to compare sentences attaching to different offenses, and ultimately to write more coherent overall standards that reflect nationally uniform, not simply local, sentencing policies.

Applying *Kimbrough'*s suggested framework, I would reason very much as does the majority. The first question is whether a sentencing judge might *sometimes* take account of a (resentenced) offender's postsentencing rehabilitation—despite a Guideline policy statement that says *never.* I would find that it is reasonable for the judge to disregard the Guidelines' absolute prohibition, despite the Commission's comparatively greater policy-formation abilities. That is because the Guideline policy statement itself runs counter to ordinary Guideline sentencing policy, which rarely forbids departures and then for very strong policy reasons. *Supra,* at 2. See USSG ch. 1, pt. A1, §4(b).

The Commission offers no convincing justification for creating this exception with respect to postsentencing rehabilitation. The Commission's commentary says that for a judge at resentencing to lower a sentence for this

reason (reflecting good behavior while the case is on appeal) would conflict with the use of other mechanisms, such as "good-time" credits, for that purpose. But how is that so? A defendant, after sentencing but while his case is on appeal, may or may not be entitled to "good time." That may depend upon whether he remains on bail or upon particular "good-time" rules. Regardless, the resentencing judge can take account of any such matter. See also *ante*, at 26–28.

The Commission's commentary also suggests it would be *inequitable* to allow an offender who is being resentenced to receive any kind of credit for his good behavior, say while his case was on appeal. But why is that so? After all, the Guidelines permit a judge to take account of an offender's good behavior after arrest but before initial sentencing. That time period could last longer than the time taken up on appeal. Why should pretrial behavior count but appeal time behavior not count? Like the majority, I find this justification for the policy statement unconvincing. See *ante*, at 25–26.

The second question is whether, given the sentencing court's power to disregard the policy statement forbidding departures based on postsentencing rehabilitation, the facts and circumstances here could warrant a departure (or variance) for that reason. And the answer, in my view, is yes. This case presents unusual rehabilitative circumstances. As the majority observes: "By the time of his second resentencing in 2009, Pepper had been drug-free for nearly five years, had attended college and achieved high grades, was a top employee at his job slated for a promotion, had reestablished a relationship with his father, and was married and supporting his wife's daughter." *Ante*, at 14. These are case-specific facts and circumstances, and they are of the kind that should lead appellate courts to show their "greatest respect" for a sentencing decision, including a departure or variance,

that rests upon them.

IV

In sum, the sentencing statutes, as we have interpreted them, require courts of appeals to review sentences for reasonableness, including sentences that depart or vary from a specific Guideline. The appellate courts should review those decisions more closely when they rest upon disagreement with Guidelines policy. *Kimbrough*, 552 U. S., at 109. They should review those decisions with greater deference when they rest upon case-specific circumstances that place the case outside a specific Guideline's "heartland." See *ibid.; Rita*, 551 U. S., at 351; *Koon*, 518 U. S., at 98–99.

By interpreting the sentencing statutes in this way, we can remain faithful to Congress' basic intent in writing them—despite the need to invalidate statutory provisions that conflict with the Sixth Amendment. The statutes create a Sentencing Commission with authority to develop sentencing policy embodied in the Guidelines. The Guidelines are to further the statutes' basic objective, namely greater sentencing uniformity, while also taking account of special individual circumstances, primarily by permitting the sentencing court to depart in nontypical cases. By collecting trial courts' reasons for departure (or variance), by examining appellate court reactions, by developing statistical and other empirical information, by considering the views of expert penologists and others, the Commission can revise the Guidelines accordingly. See USSG ch. 1, pt. A1, §3. Trial courts, appellate courts, and the Commission all have a role to play in what is meant to be an iterative, cooperative institutional effort to bring about a more uniform and a more equitable sentencing system. See *id.,* at 1–15. I would interpret the statutes before us accordingly.

# SUPREME COURT OF THE UNITED STATES

No. 09–6822

JASON PEPPER, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[March 2, 2011]

JUSTICE ALITO, concurring in part, concurring in the judgment in part, and dissenting in part.

I join Part III of the opinion of the Court. I agree with the Court that the decision below cannot be affirmed on the basis of 18 U. S. C. §3742(g), as *amicus* suggests. This provision was designed to function as part of the mandatory Guidelines scheme that the Court struck down in *United States* v. *Booker,* 543 U. S. 220, 258–265 (2005). Although *amicus'* argument is ingenious, even the sort of surgery sanctioned in *Booker* cannot transform this provision into one that can survive in the post-*Booker* world.

I also concur in the judgment to the extent that it holds that the decision below regarding evidence of postsentencing rehabilitation must be reversed. That decision, which entirely precluded consideration of such evidence, was consistent with the policy statement in §5K2.19 of the United States Sentencing Guidelines, but "[t]he *Booker* remedial decision . . . does not permit a court of appeals to treat the Guidelines' policy decisions as binding." *Kimbrough* v. *United States*, 552 U. S. 85, 116 (2007) (ALITO, J., dissenting).

Under *Booker*, however, district judges are still required in almost all cases to give significant weight to the policy decisions embodied in the Federal Sentencing Guidelines. See 552 U. S., at 116; *Gall* v. *United States*, 552 U. S. 38, 61–67 (2007) (ALITO, J., dissenting). Congress delegated

to the Sentencing Commission the authority to make policy decisions regarding federal sentencing, see 18 U. S. C. §§3553(a)(4), (5), and requiring judges to give significant weight to the Commission's policy decisions does not run afoul of the Sixth Amendment right that the mandatory Guidelines system was found to violate, *i.e.*, the right to have a jury make certain factual findings that are relevant to sentencing.

While I continue to believe that sentencing judges should be required to give significant weight to all Guidelines provisions and policy statements, see *Kimbrough*, 552 U. S*.,* at 116 (opinion of ALITO, J.), the Court in *Kimbrough* held that sentencing judges may not be required to give weight to some unusual policy decisions, see *id.,* at 109–110 (majority opinion). And JUSTICE BREYER now makes a reasonable case that the particular policy statement involved in this case is distinguishable from almost all of the other rules that the Commission has adopted. See *ante,* p. ___ (opinion concurring in part and concurring in judgment). His position seems to me more consistent with *Kimbrough* than the Court's. It would at least prevent us from sliding all the way down the slippery slope that leads back to the regime of entirely discretionary federal sentencing that preceded the enactment of the Sentencing Reform Act of 1984, 98 Stat. 1987.

Anyone familiar with the history of criminal sentencing in this country cannot fail to see the irony in the Court's praise for the sentencing scheme exemplified by *Williams* v. *New York*, 337 U. S. 241 (1949), and 18 U. S. C. §3661.*

———————

*Insofar as 18 U. S. C. §3661 permitted a sentencing judge to consider evidence of postsentencing rehabilitation, that provision was effectively modified by the subsequent enactment of the Sentencing Reform Act, which instructed the Sentencing Commission to adopt guidelines and policy statements that avoid "unwarranted sentencing disparities," 28 U. S. C. §991(b)(1)(B); see also §994(f), and which provided that sentencing courts "shall consider . . . any pertinent policy

By the time of the enactment of the Sentencing Reform Act in 1984, this scheme had fallen into widespread disrepute. See, *e.g., Mistretta* v. *United States*, 488 U. S. 361, 366 (1989) (noting "[f]undamental and widespread dissatisfaction with the uncertainties and the disparities" of this scheme); *United States* v. *DiFrancesco*, 449 U. S. 117, 142 (1980) ("It has been observed . . . that sentencing is one of the areas of the criminal justice system most in need of reform"); S. Rep. No. 98–223, p. 62 (1983) ("The shameful disparity in criminal sentences is a major flaw in the existing criminal justice system"). Under this system, each federal district judge was free to implement his or her individual sentencing philosophy, and therefore the sentence imposed in a particular case often depended heavily on the spin of the wheel that determined the judge to whom the case was assigned. See *Bullington* v. *Missouri*, 451 U. S. 430, 444, n. 16 (1981) ("There has been no attempt to separate policymaking from individual sentencing determinations" (internal quotation marks omitted)); M. Frankel, Criminal Sentences: Law Without Order 5 (1973) ("[T]he almost wholly unchecked and sweeping powers we give to judges in the fashioning of sentences are terrifying and intolerable for a society that professes devotion to the rule of law").

Some language in today's opinion reads like a paean to that old regime, and I fear that it may be interpreted as sanctioning a move back toward the system that prevailed prior to 1984. If that occurs, I suspect that the day will come when the irrationality of that system is once again seen, and perhaps then the entire *Booker* line of cases will be reexamined.

─────────

statement," 18 U. S. C. §3553(a)(5).

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–6822

_____

## JASON PEPPER, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[March 2, 2011]

JUSTICE THOMAS, dissenting.

I would affirm the Court of Appeals and uphold Pepper's sentence. As written, the Federal Sentencing Guidelines do not permit district courts to impose a sentence below the Guidelines range based on the defendant's postsentencing rehabilitation.[1] See United States Sentencing Commission, Guidelines Manual §5K2.19 (Nov. 2010) (USSG). Therefore, I respectfully dissent.

In *United States* v. *Booker*, 543 U. S. 220, 258–265 (2005), the Court rendered the entire Guidelines scheme advisory, a remedy that was "far broader than necessary to correct constitutional error." *Kimbrough* v. *United States*, 552 U. S. 85, 114 (2007) (THOMAS, J., dissenting). Because there is "no principled way to apply the *Booker* remedy," I have explained that it is "best to apply the statute as written, including 18 U. S. C. §3553(b), which makes the Guidelines mandatory," unless doing so would actually violate the Sixth Amendment. *Id.,* at 116; see *Booker*, *supra,* at 313–326 (THOMAS, J., dissenting in part); *Gall* v. *United States*, 552 U. S. 38, 61 (2007) (THOMAS, J., dissenting); *Irizarry* v. *United States*, 553 U. S. 708, 717 (2008) (THOMAS, J., concurring).

I would apply the Guidelines as written in this case

---

[1] I agree with the Court that the law of the case doctrine did not control Pepper's resentencing. See *ante*, at 29–31.

because doing so would not violate the Sixth Amendment. The constitutional problem arises only when a judge makes "a finding that raises the sentence beyond the sentence that could have lawfully been imposed by reference to facts found by the jury or admitted by the defendant." *Booker, supra,* at 313 (opinion of THOMAS, J.). Pepper admitted in his plea agreement to involvement with between 1,500 and 5,000 grams of methamphetamine mixture, which carries a sentence of 10 years to life under 21 U. S. C. §841(b)(1)(A)(viii).[2] *United States* v. *Pepper*, 412 F. 3d 995, 996 (CA8 2005). Because Pepper has admitted facts that would support a much longer sentence than the 65 months he received, there is no Sixth Amendment problem in this case.

Under a mandatory Guidelines regime, Pepper's sentence was proper. The District Court correctly calculated the Guidelines range, incorporated a USSG §5K1.1 departure and the Government's motion under Federal Rule of Criminal Procedure 35(b), and settled on a 65-month sentence. Guideline §5K2.19 expressly prohibits downward departures based on "[p]ost-sentencing rehabilitative efforts, even if exceptional." Nor is there any provision in the Guidelines for the "variance" Pepper seeks, as such variances are creations of the *Booker* remedy. I would therefore affirm the Court of Appeals' decision to uphold Pepper's sentence.

Although this outcome would not represent my own policy choice, I am bound by the choices made by Congress and the Federal Sentencing Commission. Like the majority, I believe that postsentencing rehabilitation can be highly relevant to meaningful resentencing. See *ante*, at 13–15. In light of Pepper's success in escaping drug addic-

---

[2] Pepper also stated that he understood both the 10-year statutory minimum and that the Government was making no promises about any exceptions.

tion and becoming a productive member of society, I do not see what purpose further incarceration would serve. But Congress made the Guidelines mandatory, see 18 U. S. C. §3553(b)(1), and authorized USSG §5K2.19. I am constrained to apply those provisions unless the Constitution prohibits me from doing so, and it does not here.