

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-28-2006

# USA v. Lloyd

Precedential or Non-Precedential: Precedential

Docket No. 05-4241

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Lloyd" (2006). *2006 Decisions*. Paper 136.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/136

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4241

UNITED STATES OF AMERICA

v.

ERIC LLOYD
a/k/a
Calvin Larue
a/k/a
Butter

Eric Floyd,
                    Appellant

On Appeal from the United States District Court
for the District of Delaware
(D.C. Crim. No. 02-cr-00141-1)
Honorable Kent Jordan, District Judge

Submitted under Third Circuit LAR 34.1(a)
November 9, 2006

BEFORE:  SLOVITER, CHAGARES,
and GREENBERG, Circuit Judges

(Filed: November 28, 2006)

Peter Goldberger
50 Rittenhouse Place
Ardmore, PA 19003-2276

Attorney for Appellant

Colm F. Connolly
United States Attorney
Richard G. Andrews
First Assistant U.S. Attorney
1007 N. Orange Street
P.O. Box 2046
Wilmington, DE 19899-2046

Attorneys for Appellee

---

OPINION OF THE COURT

---

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

This matter comes on before the court on Eric Lloyd's appeal from a judgment of conviction and sentence entered August 23, 2005, based on his plea of guilty to a count in a superseding indictment charging him with conspiracy to possess with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846.  The appeal raises issues limited to his resentencing after our remand for that purpose in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), pursuant to which the sentencing guidelines now are advisory. The district court prior to Booker sentenced Lloyd at the bottom of the applicable sentencing guideline range of 168 to 210 months to a 168-month custodial term to be followed by a 5-year term of supervised release.  After our remand following Booker, the district court, which did not change its calculation of the sentencing range, again sentenced Lloyd to an 168-month custodial term to be followed by a 5-year term of supervised release.

The district court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C.

§ 3742(a).  See United States v. Giaquinto, 441 F.3d 195, 197 (3d Cir. 2006); United States v. Cooper, 437 F.3d 324, 327-28 (3d Cir. 2006).  In adjudicating this appeal we recognize that, in general, a court of appeals gives deference to a district court's sentencing determinations and thus reviews sentences on an abuse of discretion basis.  Id. at 330-32.  But to the extent that this appeal involves contentions that the district court made mistakes of law, our review is plenary.  See Gibbs v. Cross, 160 F.3d 962, 964 (3d Cir. 1998).  Nevertheless, insofar as Lloyd is advancing contentions that he did not preserve in the district court, our review is confined by the exacting plain error standards.  See United States v. Merlino, 349 F.3d 144, 161 (3d Cir. 2003).

Lloyd advances three contentions on this appeal.  First, he contends that the district court erred as he regards it as having established a presumptively correct range of reasonable sentences based on the sentencing guidelines rather than having treated the guidelines as being only one of several factors under 18 U.S.C. § 3553(a) for a court to consider before imposing sentence.  Second, he contends that the court failed to offer a meaningful rationale for concluding that a sentence within the now advisory guidelines was the least sufficient sentence to achieve the purposes of punishment.  Third, he contends that it was not reasonable for the court to determine that the sentence it imposed, though within the guidelines, was the least sentence sufficient to satisfy the purposes of punishment.

## II.  DISCUSSION

### A.  The district court did not place too much weight on the advisory sentencing guidelines.

Lloyd argues that the district court "imposed sentence under a fundamental misapprehension of the statutory framework which governs after [Booker]."  Appellant's br. at 10. In this regard he contends that the court ignored Booker and instead "announced its own intention to follow the guidelines in all but unspecified exceptional cases."  Id. at 12.  He believes

that the court was wrong as post-<u>Booker</u> "the guideline range is but one of numerous factors to be 'considered,' and that the Act plainly states that the range is to be treated as inherently neither more or less significant than any other factor." <u>Id</u>. at 13.

In particular, he takes issue with the district court's following statements:

> And if I were to say, as your attorney is encouraging me, 'you know what, under [18 U.S.C. §] 3553, that feels too harsh to me, I'm just not going to pay any attention to that guideline range,' I would be ignoring what the elected representatives of the United States citizens have strongly encouraged and what I think to be wise and good public policy, which is a fair degree of predictability and consistency in sentencing across the country. . . . So I believe that guideline range is the thing that I should be looking to primarily.

<u>Id</u>. at 12;[1] app. at 122.

After our review of the matter we are satisfied that Lloyd's select extraction from the district court's remarks does not reflect fairly on what the court said. Rather, read as a whole and in context, these statements take on a different meaning. Accordingly, we quote them at greater length:

> I don't feel, as your attorney has said, shackled by the guidelines and I'm going to give you the sentence I gave you before because the guidelines I view as deserving great weight in my consideration.

> . . . .

---

[1] In his brief Lloyd does not quote all of the district court's remarks that we set forth at this point but we expand on the quoted remarks in the brief for purposes of clarity.

4

. . . I look to the direction of the Federal Sentencing Guidelines which do represent an effort by the United States Government to avoid sentencing disparity across the nation . . . . And if I were to say, as your attorney is encouraging me, 'you know what, under [18 U.S.C. §] 3553, that feels too harsh to me, I'm just not going to pay any attention to that guideline range,' I would be ignoring what the elected representatives of the United States citizens have strongly encouraged and what I think to be wise and good public policy, which is a fair degree of predictability and consistency in sentencing across the country. So I don't view the guidelines as shackling me, I view them as allowing me to be fair and consistent with other judges who have the unhappy responsibility of sentencing.

So I believe that guideline range is the thing that I should be looking to primarily. I looked at the other factors under [section] 3553(a). I've examined them and think that they are not inconsistent with the sentence that you received. I won't go into things that we talked about at the first sentencing. Suffice it to say that your criminal history for [a] relatively young man is significant and clearly played a role here.

I reject the assertion that the sentence given to you is out of keeping with what the codefendants got. On the contrary, for each of your codefendants, as with you, I paid careful attention to what the criminal history and the offense level was and sentenced them as I thought appropriate in light of all the factors that were in play in each of their cases.

. . . .

The Court has considered the defendant's arguments regarding sentencing and has

considered [the] United States Supreme Court's decision in <u>Booker</u> which ruled [the] sentencing guidelines are now advisory. The Court also believes the sentence which is within the advisory guidelines range . . . meets the sentencing goals outlined in Title 18, United States Code, Section 3553.

App. at 121-25.[2]

Whether we consider the district court's view of the role of the sentencing guidelines from a plenary approach or under an abuse of discretion standard, we cannot say that the court erred in applying <u>Booker</u>. In fact, the court's remarks are entirely consistent with our opinion in <u>Cooper</u> in which we discussed the function of the sentencing judge after <u>Booker</u> and, in particular, the role of the guidelines in relation to the other 18 U.S.C. § 3553(a) sentencing factors. In <u>Cooper</u> we held that the district court must give "meaningful consideration" to the section 3553(a) factors,[3] but the court need not "discuss and make

---

[2]There were two other defendants in this case, Albari Malik Johnson, who pleaded not guilty and was convicted of conspiracy to possess with intent to distribute an unspecified amount of cocaine, and Ernest Morris, who pleaded guilty to offenses arising out of the conspiracy. The court imposed a below-guideline custodial sentence of 180 months to be followed by a 10-year term of supervised release on Morris pursuant to a government substantial-assistance motion. The court sentenced Johnson, who had a criminal history category of I and had a less significant role in the conspiracy than Lloyd, to a 121-month custodial term to be followed by a 3-year term of supervised release.

[3]     The section 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

6

findings of each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." Id. at 329. As to the function of the guidelines, in Cooper we stated:

> The advisory guidelines range is itself one of the § 3553(a) factors, 18 U.S.C. § 3553(a)(4), and continues to play an integral part in sentencing decisions. In Booker, the Court explicitly directed district courts to continue to 'take account of the Guidelines together with other sentencing goals. The Guidelines remain an essential tool in creating

---

offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendants as set forth in the guidelines . . . ;

(5) any pertinent policy statement issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

7

a fair and uniform sentencing regime across the country,' and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct. The § 3553(a) factors were intended to guide the Sentencing Commission in its formulation of sentencing guidelines.

Id. at 331 (citations and footnotes omitted).

The district court's remarks at sentencing in this case were consistent with our holding in Cooper. In this case the court relied on the guidelines as "a natural starting point" and gave "meaningful consideration" to the other section 3553(a) factors. In particular, the court at the resentencing considered more factors than the guidelines in crafting Lloyd's sentence as it also took into account the other section 3553(a) considerations including his lengthy criminal history, the sentences of the other defendants, and the need to avoid sentencing disparities among defendants with similar records found guilty of similar misconduct. In this exercise, it did not abuse its discretion.

Lloyd also argues that the district court erred in failing to consider his post-sentence rehabilitation efforts. But his attorney in the district court did not object at sentencing to the court's approach with respect to his post-sentence rehabilitation efforts and, thus, we could grant relief by reason of the district court's treatment of those efforts only if we found plain error.

U.S.S.G. § 5K2.19 (Policy Statement) states, "Post-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing the defendant for that offense." Under Booker, it is entirely appropriate for a court to consider pertinent policy statements. See 18 U.S.C. § 3553(a)(5). Lloyd nevertheless contends that section 5K2.19 no longer has prohibitive force so that, in this case, the district court should have given more consideration than it did to his post-sentencing rehabilitation efforts. In this regard the court stated,

8

I have one final comment for you, Mr. Lloyd. I have listened carefully and paid attention to information provided to me by your attorney about your postconviction rehabilitative efforts. It's true that the sentencing guidelines direct me not to make that a factor in reducing the sentence that you're going to face but I hope you continue on the path you have chosen. Regardless of what I say or anybody else says or does, your life is your own, sir, and you do yourself the most good by continuing on in your effort to make the most of your opportunities.

App. at 126-27.

We see no plain error or indeed any error at law in what the court did. Though section 5K2.19, as part of the guidelines as a whole, is now advisory, nevertheless it would be an unusual case in which a defendant's post-sentence rehabilitation efforts following a <u>Booker</u> remand should impact on the sentence. After all, by definition those circumstances did not exist at the time of the original sentence. In <u>United States v. Worley</u>, 453 F.3d 706 (6th Cir. 2006), the Court of Appeals for the Sixth Circuit looked at this specific issue and held:

> [I]n a <u>Booker</u> remand . . . the conduct or circumstances that bear on the § 3553(a) factors must have been in existence at the time the original sentence was imposed. In [the case under review], the § 3553(a) factors raised by the defendants all involved matters occurring after the date of sentencing. The goal of the [<u>Booker</u>] remand is to determine if, at the time of sentencing, the district judge would have imposed a different sentence in the absence of mandatory guidelines. Post-sentencing events or conduct simply are not relevant to that inquiry.

<u>Id.</u> at 709 (quoting <u>United States v. Re</u>, 419 F.3d 582, 584 (7th Cir. 2005)). Both the Courts of Appeals for the Sixth and Seventh Circuits have concluded that "given the limited nature

9

of the remand, the defendant's post-sentencing efforts while incarcerated were not relevant . . . ." Worley, 453 F.3d at 709; see also Re, 419 F.3d at 583-84.

We essentially agree with these courts, though we would not hold that a court never could consider a defendant's post-sentencing rehabilitation efforts when resentencing. In this regard we point out that Booker surely impacted on the mandatory nature of section 5K2.19, even though it has not changed the usual practical impact of that section at a Booker resentencing. Yet our opening for consideration of post-sentencing rehabilitation efforts is narrow for we reiterate our view that a court, except in unusual cases, should consider only conduct and circumstances in existence at the time of the original sentencing when it resentences following a Booker remand. After all, an approach permitting a defendant's post-sentencing rehabilitation efforts to impact on a resentence "would unfairly disadvantage defendants who were ineligible for re-sentencing and therefore had no opportunity to bring their rehabilitative efforts before the sentencing court." United States v. Hertzog, 186 Fed. Appx. 314, 317 (3d Cir. 2006).[4] In this case we are unaware of any circumstance that could satisfy the exacting standard that we have set to justify a court in considering post-sentencing rehabilitation efforts following a Booker resentencing.[5]

_____

[4]We realize that Hertzog was a not precedential opinion but we quote that opinion because we are adopting its language as our own rather than as a precedent. In fact, in Hertzog we used the language we now quote in characterizing the district court's remarks at the resentencing. Significantly, the district court in Hertzog recognized that it had discretion to grant a departure for the defendant's post-sentencing rehabilitation efforts, an approach with which we agree though it should exercise its discretion to consider post-sentencing rehabilitation efforts sparingly.

[5]We do not address the propriety of considering post-sentencing rehabilitation efforts at a resentencing other than in a Booker context, though we observe that section 5K2.19 by its terms is not confined to Booker resentencings.

B. The district court gave sufficient reasons for
not sentencing Lloyd below the guideline range.

Under 18 U.S.C. § 3553(c)(1), a district court is obligated
to state in open court "the reasons for imposing a sentence at a
particular point within [a guidelines sentencing] range"
exceeding 24 months. That section obligates a district court to
"give concrete reasons" for its sentence. United States v.
Gricco, 277 F.3d 339, 363 (3d Cir. 2002).

Prior to Booker, we held that a court's failure to comply
with this requirement was harmless if it sentenced the defendant
at the bottom of the guidelines range as the defendant received
the lightest possible sentence, absent a departure. Id. at 363
n.15. Lloyd contends that now that the guidelines are merely
advisory, a sentence at the bottom of the range is not the least
possible sentence and, accordingly, a court's failure to comply
with section 3553(c)(1) is not harmless. Therefore, Lloyd argues
that the district court must comply with the requirement to state
its reasoning in all sentencings where the guidelines range
exceeds 24 months, even in cases where the sentence is at the
bottom of the guidelines range. Lloyd did not advance this
contention in the district court.

Even assuming that Lloyd is correct that a violation of
section 3553(c)(1) is no longer necessarily harmless if the court
sentences the defendant at the bottom of the guidelines range, in
this case the court was in compliance with any requirement, if
there was one, that it state its reasoning for imposing the
sentence at a particular point within the applicable range and the
fact that it did not give a fuller explanation certainly could not
rise to the level of plain error or, indeed, any error at all.[6] In
reaching this conclusion we recognize that, of course, it is

---

[6]We have explained the application of the plain error standard as
follows: "Thus, for this Court to grant the relief the defendant[] seek[s],
the District Court must have committed plain error that prejudiced them.
Even where error and prejudice are found, we will only exercise our
discretion to correct the error if it 'seriously affect[s] the fairness,
integrity or public reputation of judicial proceedings.'" Merlino, 349
F.3d at 161 (citations omitted).

11

always possible for a court to say more at a sentencing than it does. Yet a court can provide "concrete reasons" for its sentence without speaking at great length and the court did so here. After all, among other things, it stated that Lloyd's "criminal history for [a] relatively young man is significant and clearly played a role here," and observed that the sentence was in proportion to the sentences of the two co-defendants. App. at 123. Moreover, the court referred to the original sentencing, in which it said:

> I want to make it clear that I don't believe that you're simply a misguided youth at this point in your life. You appear, from the evidence that I've seen, to be a sophisticated businessman . . . , but who has chosen as his stock and trade the poison of drugs, which are a curse on society and which, in supreme irony, inflict upon others the very circumstances that have been so terribly detrimental in your own life.

> That's not lost on me at all. And the poison that you were instrumental in bringing into this community may very well be – indeed, it's almost certain to be producing another boy whose mother or father will die early, who will beat and abuse them because of drug abuse, and who will, in turn, have their life wrecked.

App. at 5-6. Plainly the court satisfied its obligation to provide "concrete reasons" for the sentence, which included Lloyd's criminal record, the co-defendants' sentences, and the danger of Lloyd's crime to society. Indeed, we believe that ordinarily a court when fully explaining its sentence will satisfy section 3553(c)(1) even without mentioning that section. In the circumstances, we repeat that the court did not commit plain error or any error at all under section 3553(c)(1).[7]

---

[7]Lloyd's positions on this appeal seem to be inconsistent. First he argues that the guidelines are merely one factor among numerous considerations of equal weight in the sentence. Then he contends that section 3553(c)(1) has an enhanced significance after Booker, though it might be expected that his contention on the second point in view of his

12

## C. The sentence was reasonable.

Lloyd argues that the 168-month sentence, though at the bottom of the guidelines range, was unreasonable because it was greater than necessary to accomplish the goals of criminal punishment and a lesser penalty would have been sufficient. He argues that the sentence was unreasonable because: he was only 26 years old at the time of resentencing; he has three children; he did not know his father; his mother was a drug addict who died when he was 17; he accumulated nine criminal history points by age 18; he left high school after the tenth grade; he was a drug abuser; he made significant efforts at self-improvement while in prison; and he has loving friends and family. Lloyd asserts that "[a]ny 'reasonable' sentencing decision would have to take into account these objective indicators of a substantial need for and likelihood to benefit from rehabilitation, following a rocky start in very difficult circumstances." Appellant's br. at 34-35.

In Booker "the Supreme Court directed appellate courts to review sentences for reasonableness . . . . " Cooper, 437 F.3d at 326. In Cooper we described the sentencing court's obligations and the contours of an appellate court's review:

> To determine if the court acted reasonably in imposing the resulting sentence, we must first be satisfied the court exercised its discretion by considering the relevant [§ 3553(a)] factors . . . . The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. The court need not discuss every argument made by a litigant if an argument is clearly without merit. Nor must a court discuss and make findings of each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing . . . .

> . . . .

first point should be exactly contrary to the one he takes.

13

In addition to ensuring a trial court considered the § 3553(a) factors, we must also ascertain whether those factors were reasonably applied to the circumstances of the case. In doing so, we apply a deferential standard, the trial court being in the best position to determine the appropriate sentence in light of the particular circumstances of the case. Under such circumstances, deference should be given. As the Court of Appeals for the Seventh Circuit recently held,

> [t]he question is not how we ourselves would have resolved the factors identified as relevant by section 3553(a) . . . nor what sentence we ourselves ultimately might have decided to impose on the defendant. We are not sentencing judges. Rather, what we must decide is whether the district judge imposed the sentence he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a).

> While we review for reasonableness whether a sentence lies within or outside the applicable guidelines range, it is less likely that a within-guidelines sentence, as opposed to an outside-guidelines sentence, will be unreasonable . . . .

> Although a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range, a within-guidelines range is not necessarily reasonable per se. Otherwise, as several Courts of Appeals have concluded, we would come close to restoring the mandatory nature of the guidelines excised in Booker. Nor do we find it necessary . . .

14

> to adopt a rebuttable presumption of reasonable for within-guidelines sentences . . . .
>
> To sum up, appellants have the burden of demonstrating unreasonableness. A sentence that falls within the guidelines range is more likely to be reasonable than one outside the guidelines range. There are no magic words that a district judge must invoke when sentencing, but the record should demonstrate that the court considered the § 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record.

Id. at 329-32 (citations and footnotes omitted).

Lloyd has not satisfied his burden of proving that the 168-month sentence followed by a 5-year term of supervised release was unreasonable. The sentence was at the bottom of the guideline range and thus, in the words of Cooper, was "more likely to be reasonable that one outside the guidelines range." The court gave "meaningful consideration" to the relevant section 3553(a) factors and "reasonably applied the factors to the circumstances of the case." See United States v. Charles, No. 05-5326, __ F.3d __, 2006 WL 3231396, at * 2 (3d Cir. Nov. 9, 2006). Though the court considered Lloyd's life circumstances which he contends should have mitigated the sentence, the fact is that there is no denying Lloyd was involved in criminal conduct involving a substantial quantity of cocaine.[8] He has been living the life of a criminal since age 17, having been convicted of numerous felonies and other offenses.

---

[8]Arguably Lloyd's criminal history suggests that a longer rather than shorter sentence than otherwise might have been appropriate should have been imposed. That view of a substantial criminal history surely is the more conventional approach than that which Lloyd takes. After all, under the sentencing guidelines the more aggravated a defendant's criminal history, the higher his sentencing range is likely to be.

## III.  CONCLUSION

For the foregoing reason the judgment of conviction and sentence entered August 23, 2005, will be affirmed.

————