PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No  10-3337
_____

UNITED STATES OF AMERICA

v.

NELSON LUIS DIAZ,
                              Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-07-cr-00147-001)
District Judge:  Honorable John E. Jones, III
_____

Argued March 22, 2011

Before: SLOVITER, FUENTES, and SMITH, Circuit Judges

(Filed: May 5, 2011)
_____

Ronald A. Krauss   (Argued)
Lori J. Ulrich
Office of Federal Public Defender
Harrisburg, PA  17101

        Attorneys for Appellant

Michael A. Consiglio   (Argued)
Eric Pfisterer
Office of United States Attorney
Harrisburg, PA  17108

Attorneys for Appellee

_____

OPINION OF THE COURT

_____


SLOVITER, *Circuit Judge*.

This court previously vacated one of the two counts of conviction of Nelson Diaz under 18 U.S.C. § 924(c) because it was not based on a second predicate offense.  On remand to the District Court for resentencing, the District Court rejected Diaz's contention that it was required to merely subtract the 120-month sentence associated with the vacated count.  The Court held that it was permitted to resentence *de novo*.  Diaz appeals and the case is now before the same panel of judges who vacated Diaz's sentence in the first instance.  In addition, we directed the parties to address the Supreme Court's recent decision in *Pepper v. United States*, 131 S. Ct. 1229 (2011).

## I.

Nelson Diaz was convicted by a jury of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and two counts of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c).  In crafting the original sentence, the District Court was guided by § 4B1.1(c) of the Sentencing Guidelines.  Section 4B1.1(c) provides that for a defendant convicted of multiple counts, at least one of which is a conviction other than § 924(c), the applicable Guideline range is the greater of "the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) . . . count(s) to the minimum and the maximum of the otherwise applicable guideline range" for the non-§ 924(c) count(s) of conviction, or 360 months to life.  In other words, § 4B1.1(c) provides a floor Guideline range of

2

360 months to life for career offenders convicted of at least one § 924(c) count.[1]

Pursuant to this provision, the District Court determined, and the parties agreed, that the applicable Guideline range was the default Guideline of 360 to life. With this range in mind, the District Court evaluated the § 3553(a) factors and declined to vary from the Guideline range. Accordingly, the District Court imposed a sentence of 480 months—the sum of the 240-month sentence for the § 841(a)(1) distribution offense and ten years (or 120 months) for each of the two § 924(c) counts. This sentence was within the Guideline range of 360 years to life. Defense counsel objected to the imposition of a sentence on the second § 924(c) count on double jeopardy grounds but the District Court denied Diaz's objection.

Diaz appealed the conviction and sentence associated with the second § 924(c) firearm count. This court in *Diaz I* agreed with Diaz and held that the second § 924(c) count must be based on a separate underlying drug offense. *United States v. Diaz*, 592 F.3d 467, 475 (3d Cir. 2010) (*Diaz I*).

We discussed our remedy for the double jeopardy violation on two occasions in the opinion. At the conclusion of the discussion section on the double jeopardy claim, we stated, "[f]or the reasons set forth, we will vacate one of Diaz's two § 924(c) convictions and remand to the District Court for resentencing. *See* [*United States v.*] *Taylor*, 13 F.3d [986,] 994 [6th Cir. 1994)] (prescribing the appropriate remedy in this context)." *Diaz I*, 592 F.3d at 475. Then, in the concluding section of the opinion, we stated, "[f]or the reasons set forth . . . [w]e will vacate one of the two § 924(c) violations and remand this case to the District Court for resentencing." *Id.* at 476.

---

[1] Under § 3E1.1 and § 4B1.1(c)(3) this default or floor Guideline range for career offenders convicted of at least one § 924(c) count can be reduced if the defendant accepted responsibility. These modifications are not relevant here because Diaz did not accept responsibility.

On remand, Diaz contended that this language in *Diaz I* was a specific instruction to nullify or subtract the 120-month sentence associated with the vacated § 924(c) conviction. The District Court rejected this contention and held that because the original sentence treated the counts of conviction as interdependent, *de novo* sentencing was appropriate so long as the remanding court did not specifically direct otherwise. The District Court held that the language from *Diaz I* did not amount to a specific instruction to merely subtract 120 months from the original sentence. Accordingly, the District Court resentenced Diaz *de novo*.

Notwithstanding the fact that one of the § 924(c) counts had been vacated, the applicable Guideline range under § 4B1.1 was still 360 to life. However, the District Court refused the government's request to impose an identical 480-month sentence. The District Court explained that "the Third Circuit's mandate has to mean something besides that I simply cookie cutter resentence you to the same term of imprisonment that you had." App. at 113. In other words, the District Court believed it was necessary "to give some consideration to the fact that we're dealing with one less conviction here." App. at 115.

Although the District Court noted that the second § 924(c) conviction was vacated, it held that "that doesn't mean that I can't take cognizance of the behavior, the conduct for the purposes of sentencing, and I must do that even though technically the conviction ceases to stand." App. at 111. Accordingly, based largely on the fact that there was one less conviction, the Court reduced Diaz's sentence from the original 480 months to 400 months—comprised of 240 months on the distribution offense and 160 months on the sole § 924(c) offense.

Prior to announcing the new sentence, the District Court heard from Diaz, his brother, and his attorney, who argued that since being incarcerated, Diaz had taken advantage of rehabilitation programs and was "trying to better [himself]." App. at 105. The Sentencing Memorandum submitted on Diaz's behalf explained in more detail the

4

rehabilitation efforts Diaz was making. Specifically, he had enrolled in a GED program, computer training class, and had received certificates in environmental services and custodial maintenance. Custodial records also indicated that Diaz was interacting well with prison staff and other inmates. The District Court recognized "that the defendant has attempted to better himself and has a commendable record during his period of incarceration, which is fine as far as it goes, but doesn't really figure much in my calculus at this point." App. at 109. No revised presentence report was prepared by probation for the resentencing proceeding. Diaz again appeals.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. To the extent it is alleged that the District Court made errors of law, our review is plenary. *United States v. Lloyd*, 469 F.3d 319, 321 (3d Cir. 2006). Otherwise, our review of a criminal sentence is for abuse of discretion. *Id.*

## III.

### A. The propriety of *de novo* resentencing

In *United States v. Miller*, 594 F.3d 172, 181-82 (3d Cir. 2010), this court held that "[w]hen a conviction for one or more interdependent counts is vacated on appeal, the resentencing proceeding conducted on remand is de novo unless we specifically limit the district court's authority." Miller was originally convicted and sentenced for one count of knowingly receiving child pornography and one count of knowingly possessing it. *Id.* at 175. We vacated one of the sentences because it violated double jeopardy and amounted to multiple punishments for the same offense. *Id.* at 176. The district court had originally grouped the child pornography counts and sentenced Miller to 46 months as prescribed by § 3D1.2(d) of the Sentencing Guidelines. *Id.* at 180. Because the original sentence was based on a Guideline provision that

5

grouped the counts together, we held that "[i]n recalculating Miller's offense level for the [remaining] count, the District Court could not rely on a discrete sentence previously imposed for that offense. Instead, the District Court had to ungroup the two offenses and determine the base offense level applicable to the [remaining] count alone." *Id.* at 181. Thus, we held that "counts that were grouped pursuant to the Sentencing Guidelines at the original sentencing are interdependent, such that the vacation of one of the grouped counts requires a de novo sentencing on remand unless we direct otherwise." *Id.* at 182.

In addition to grouping under the Sentencing Guidelines, we have noted other indicia of interdependence. In *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997), we held that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When a conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand . . . if that appears necessary in order to ensure that the punishment still fits both crime and criminal."

*Davis* also dealt with the vacation of a § 924(c) count and we held that the § 924(c) count and underlying offense "are interdependent and result in an aggregate sentence, not sentences which may be treated discretely." *Id.* at 121. We noted that "[t]he end result of this policy must be that where a sentencing judge imposed a multicount sentence aware that a mandatory consecutive sentence is to be tacked on to it and the mandatory sentence is later stricken, the judge is entitled to reconsider the sentence imposed on the remaining counts." *Id.* at 122 (quotations and citations omitted).

That is precisely what happened in this case—the District Court originally thought it was required to impose a sentence on the second § 924(c) count (albeit not a 25-year mandatory sentence), and that count was eventually stricken.

6

Accordingly, the Court originally imposed an interdependent sentence and, on remand, was permitted to resentence the remaining counts *de novo*.

An examination of the Sentencing Guidelines that governed Diaz's original sentence and the sentencing hearing itself confirm that this was an interdependent sentence. As outlined above, § 4B1.1 of the Sentencing Guidelines contemplates grouped or interdependent sentences for each § 924(c) offense and the underlying offense, similar to the Guideline at issue in *Miller*. Specifically, § 4B1.1(c) requires the sentencing judge to add the Guideline range for the underlying drug offense to the mandatory minimums associated with each § 924(c) count and then compare that range to the default career offender range of 360 to life. Accordingly, although the Guideline range that was actually applied to Diaz both originally and on remand was 360 to life, in settling upon that range the District Court had to compare it to a composite range based on the combination of each count. Therefore, the sentence bears a direct relationship under the Guidelines to a consecutively constructed Guideline range that considers each of the offenses and builds one on top of the other. The fact that the default 360 to life was longer than the consecutively constructed Guideline sentence does not negate the interdependence of the sentence. As the District Court explained when originally sentencing Diaz within the Guideline range, "4B1.1 was directly intended to contemplate circumstances like this." App. at 56.

The sentencing colloquy also demonstrates that the sentences were interdependent. When defense counsel objected to a consecutive sentence being imposed on the second § 924(c) count, the government attorney suggested that "the Court had in its mind a sentencing scheme" and suggested that the District Court merely restructure the sentence so as not to impose a consecutive sentence on the second § 924(c) count. App. at 61. The Court specifically affirmed that it had a sentencing scheme in mind—indicating that it viewed the sentences as interdependent.

7

Based on the applicable Guidelines, the sentencing colloquy, and the contingent nature of the § 924(c) offense, the sentences in this case were interdependent. Therefore, absent specific instructions to the contrary, the District Court appropriately resentenced Diaz *de novo*. Thus, we turn to whether there was any such instruction.

Diaz contends that the reference in *Diaz I* to the Sixth Circuit's decision in *United States v. Taylor*, 13 F.3d 986, 994 (6th Cir. 1994), with a parenthetical description of *Taylor* as "prescribing" the "appropriate remedy" on remand, unambiguously dictated limited resentencing. In *Taylor*, as we did in *Diaz I*, the Sixth Circuit vacated a second § 924(c) conviction because it was not based on a second underlying predicate offense. *Id.* In issuing its remedy, the Sixth Circuit "remand[ed] to the district court with an order to vacate [the defendant's] conviction and sentence on the second [§ 924(c) count]." *Id.* The Court directed that the defendant, "should remain sentenced to 27 months on Count 1 [the drug trafficking count], and to 5 years on the single § 924(c)(1) conviction." *Id.*

There is no question that *Taylor* involved an explicit instruction regarding what the new sentence should be on remand. However, a mere "*see*" citation to a case from another circuit, even with an explanatory parenthetical, does not constitute the kind of specific limitation that we held was necessary to overcome the default *de novo* standard we established in *Miller*. In contrast, in *Diaz I* we provided a very general instruction, stating that "we remand this case to the District Court for resentencing." 592 F.3d at 476. If we had intended the District Court to simply subtract the 120-month sentence associated with the vacated count, we could have easily so stated. We did not. Accordingly, the District Court correctly concluded that we did not limit its ability to resentence *de novo* and that because the original sentence contained interdependent counts, *de novo* resentencing was permitted.[2]

_____

[2] In so holding, we are careful to note, as we did in *Miller*, that we take no position on whether *de novo*

8

## B. Post-sentencing rehabilitation

Having concluded that *de novo* resentencing was appropriate on remand, we turn to Diaz's alternative argument:  that the District Court failed to fully consider Diaz's post-incarceration rehabilitation.  Subsequent to the resentencing hearing, the Supreme Court issued its opinion in *Pepper v. United States*, 131 S. Ct. 1229 (2011), which controls our analysis.

Pepper was originally sentenced to 24-months imprisonment, which represented a significant downward departure from the Guideline range.  The government appealed the sentence and the Eighth Circuit held that the sentencing judge ignored the Guidelines and impermissibly departed out of a "desire to sentence [the defendant] to the shortest possible term of imprisonment that would allow him to participate in the intensive drug treatment program at the federal prison."  *United States v. Pepper*, 412 F.3d 995, 999 (8th Cir. 2005) (*Pepper I*).

On remand, the district court again sentenced Pepper to 24-months imprisonment, this time based largely on Pepper's rehabilitation while incarcerated.  The Eighth Circuit once more reversed, holding that "evidence of [defendant]'s post-sentencing rehabilitation is not relevant and will not be permitted at resentencing because the district court could not have considered that evidence at the time of the original sentencing."  *United States v. Pepper*, 486 F.3d 408, 413 (8th Cir. 2007) (*Pepper II*).

The Supreme Court reversed, and held that the district court was permitted to sentence *de novo* and consider the defendant's post-incarceration rehabilitation.  *Pepper*, 131 S. Ct. at 1236.  The Supreme Court emphasized that sentencing judges exercise wide discretion in the types of evidence they may consider when imposing a sentence and that, consistent

resentencing is the default approach after a count contained in a non-interdependent sentence has been vacated.  *See Miller*, 594 F.3d at 180.

with that discretion, no restrictions should be placed on the district court's ability to consider evidence of post-incarceration rehabilitation. *Id.* at 1235-36.

Because *Pepper* was not announced until after the District Court had resentenced Diaz, the court could not have known that it was permitted to consider Diaz's post-sentencing rehabilitation consistent with the Supreme Court's decision in *Pepper*. As outlined above, Diaz and his attorney both explained at the resentencing hearing that Diaz had a positive record since he had been incarcerated and was attempting to better himself. The District Court did in fact permit the defense to offer additional evidence at the resentencing without restricting the nature of the evidence it could proffer. Nonetheless, the District Court said that Diaz's rehabilitation "is fine as far as it goes, but doesn't really figure much in my calculus at this point." App. at 109. Arguably, as the government contends, this language indicates that the District Court did, in fact, weigh the evidence of rehabilitation but concluded it was not, in the end, worth much. Just as likely, Diaz's rehabilitation did not "figure much" into the calculus because the District Court was unsure that rehabilitation was something courts should or could actively consider while resentencing.

This latter view gains credence when one considers prevailing circuit case law and Guideline provisions at the time of resentencing which, in contrast to *Pepper*, limited a district court's consideration of post-sentencing rehabilitation. In *United States v. Sally*, 116 F.3d 76 (3d Cir. 1997), we held that "post-offense rehabilitation efforts, including those which occur *post-conviction*, may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply."

However, subsequent to *Sally*, in 2000, the Sentencing Guidelines were amended to include § 5K2.19, which provides that "[p]ost-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a

term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing the defendant for that offense." This revision, in force at the time of Diaz's resentencing, seems to negate the already narrow circumstances under which courts could consider post-sentencing rehabilitation under our decision in *Sally*. Moreover, in *United States v. Lloyd*, 469 F.3d 319, 325 (3d Cir. 2006), we affirmed the validity of § 5K2.19 and held that courts should not consider a defendant's post-sentencing rehabilitation efforts when resentencing except in "unusual" cases.

The Supreme Court in *Pepper* specifically addressed § 5K2.19, dismissed it as merely advisory and questioned the validity of the policy rationales motivating limitations on post-sentencing rehabilitation evidence. 131 S. Ct. at 1247-48. Accordingly, to the extent that the District Court was aware of the limitations we had imposed on consideration of post-sentencing rehabilitation in *Lloyd* and *Sally* and relied on those limitations, that reliance was erroneous in light of *Pepper*. The government conceded as much at oral argument when it agreed that *Lloyd*'s continuing validity was thrown into question by *Pepper*.[3] The fact that no revised

---

[3] Importantly, we note, as the Supreme Court did in *Pepper*, that to the extent that a court remands for a limited resentencing proceeding, and not a *de novo* proceeding, limitations on the consideration of post-sentencing rehabilitation may continue to be appropriate. *See Pepper*, 131 S. Ct. at 1249 n.17. In that vein, it is worth noting that *Lloyd* itself dealt with a remand pursuant to *Booker*, and, in that context, the exclusion of post-sentencing rehabilitative evidence may still be proper—an issue we need not reach here. This subtle distinction may not have been discerned by the District Court who could have nevertheless been guided by *Lloyd*. Indeed, the distinction between a limited *Booker* remand and *de novo* remand seems to have made little difference to the Supreme Court, which cited *Lloyd* as emblematic of the circuit split regarding the role of post-sentencing rehabilitation evidence. *Pepper*, 131 S. Ct. at 1239 n.6.

presentence report was prepared documenting any alleged post-incarceration rehabilitation further supports a conclusion that the issue of rehabilitation was not fully considered.

Given the ambiguity in the record, the interests of justice demand that we remand (yet again) to the District Court so that Diaz and the District Court have every opportunity to take counsel from the Supreme Court's instructions in *Pepper*: that is, that evidence of post-sentencing rehabilitation may be considered when resentencing *de novo*. The marginal effect of our decision may be slim and the District Court may conclude that no alteration of the sentence is necessary. But, out of an abundance of caution and due deference to the Supreme Court's clear instructions in *Pepper*, we vacate the judgment of sentence imposed by the District Court and remand for a *de novo* resentencing proceeding including full consideration of Diaz's post-incarceration rehabilitation.

## IV.

For the foregoing reasons, we will vacate the judgment of sentence and remand to the District Court for proceedings consistent with this opinion.

---

We also note that *Pepper*, *Sally* and § 5K2.19 deal with requests for downward departures or variances based on post-sentence rehabilitation, whereas Diaz primarily urged a sentence at the bottom of the applicable Guideline range. Because the relief Diaz seeks is less extraordinary, post-sentencing rehabilitation should be considered. Nor does *Pepper* indicate that evidence of post-sentencing rehabilitation is only relevant to requests for downward departures or variances. *See id.* at 1236. Instead, *Pepper* discusses the importance of post-sentencing rehabilitation in the context of evaluating the § 3553(a) factors which, in addition to controlling whether a variance should be granted, also determine where within a Guideline range a defendant should be sentenced. *Id.* at 1247.

12