NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0061n.06

No. 23-3409

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 09, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| RICHODE MEREDITH-HILL, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SUTTON, Chief Judge; CLAY and BLOOMEKATZ, Circuit Judges.

**CLAY, Circuit Judge**. Following the district court's vacatur of Defendant Richode Meredith-Hill's original sentence, Meredith-Hill appeals the judgment of the district court upon resentencing, arguing that his new sentence is procedurally unreasonable. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Meredith-Hill's Underlying Offense

Meredith-Hill was part of a large, organized group called the "Rack Gang," which perpetrated a series of credit union robberies throughout 2017. On April 3, 2017, Meredith-Hill participated in two armed robberies at two different credit unions. First, Meredith-Hill and three others tried to rob the Buckeye State Credit Union in Shaker Heights, Ohio, but the group was unsuccessful in obtaining any money. Second, the four men robbed over $10,000 from the Cardinal Community Credit Union in Willoughby, Ohio. The Cardinal Community robbery culminated in a perilous high-speed chase, during which the group successfully fled and evaded

the local police in a stolen vehicle. Both robberies were committed with firearms and involved serious threats of physical violence.

During the FBI's subsequent investigation, Meredith-Hill admitted his involvement and claimed that he drove the getaway vehicle for both robberies. In contrast, one of the other participants in the robberies, Lashawn Davis, told the police that Meredith-Hill played a more active role by entering the credit unions with a firearm. The investigation determined that Meredith-Hill likely entered and robbed the Buckeye State Credit Union because his DNA matched the DNA found on the black gloves used during the crime. As for the Cardinal Community Credit Union robbery, the investigation found it likely that Meredith-Hill did serve as the getaway driver and fled at recklessly high speeds from police. Based on the conflicting evidence and confessions, the investigation was ultimately inconclusive as to Meredith-Hill's exact role in the two robberies. When Meredith-Hill was subsequently arrested, he recanted his prior confession.

Following a jury trial in October 2019, the jury found Meredith-Hill guilty of aiding and abetting the following counts: (1) attempted interference with commerce by means of robbery in violation of 18 U.S.C. § 1951 [Buckeye Credit Union]; (2) carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) [Buckeye Credit Union]; (3) interference with commerce by means of robbery in violation of 18 U.S.C. § 1951 [Cardinal Credit Union]; and (4) carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) [Cardinal Credit Union].[1] To summarize, Meredith-Hill was convicted of two counts related to the robberies, and two accompanying counts related to the firearms brandished during the robberies.

---

[1] The jury acquitted Meredith-Hill of a fifth count related to the alleged attempted robbery of the Eaton Family Credit Union.

**B. Meredith-Hill's Original Sentence**

During Meredith-Hill's initial sentencing on January 10, 2020, the district court adopted the calculation within the presentence report, which set Meredith-Hill's total offense level at 28 and his criminal history category at II, corresponding to a Guidelines range of 87 to 108 months' imprisonment for the robbery and attempted robbery counts (Counts 1 and 3). The court also recognized that Counts 2 and 4 carried mandatory seven-year minimum sentences to be served consecutively. Therefore, assuming the court chose the mandatory minimum, Meredith-Hill's aggregate advisory range was 255 to 276 months' imprisonment.

Following its thorough consideration of the factors delineated in 18 U.S.C. § 3553(a) and arguments from both sides, the district court imposed an 87-month sentence for Counts 1 and 3 to run concurrently. Then, with respect to the § 924(c) charges in Counts 2 and 4, the district court imposed the minimum seven-year sentence for each to be served consecutively, totaling 168 months of imprisonment. In the aggregate, the district court initially imposed a 255-month sentence. Upon appeal, this Court affirmed Meredith-Hill's conviction and sentence. *See United States v. Meredith-Hill*, No. 20-3083, 2021 WL 3079695, at *9 (6th Cir. July 21, 2021).

**C. Meredith-Hill's Resentencing**

Following the Supreme Court's holding that attempted Hobbs Act robbery cannot constitute a crime of violence for purposes of § 924(c), *see United States v. Taylor*, 596 U.S. 845, 860 (2022), Meredith-Hill filed a 28 U.S.C. § 2255 motion to vacate his conviction on Count 2. Based on the newly disqualified predicate crime in Count 1—attempted Hobbs Act robbery—the corresponding § 924(c) firearm charge in Count 2 could no longer stand. The government filed a response in agreement, and the district court accordingly vacated Meredith-Hill's conviction on

Count 2 and scheduled a *de novo* resentencing hearing. Count 4—with the predicate offense of completed Hobbs Act robbery—was not affected by the holding in *Taylor*.

Upon resentencing, although the seven-year minimum sentence under Count 2 was vacated, the presentence report calculated a higher total offense level of 31 for Counts 1 and 3. This change stemmed from a corresponding five-level increase under U.S.S.G. § 2B3.1(b)(2)(C) to Count 1 for brandishing a firearm during the attempted robbery of Buckeye State Credit Union.[2] Combined with his unchanged criminal history category of II, the advisory Guidelines range for Counts 1 and 3 became 121 to 151 months' imprisonment, and Count 4 still carried a seven-year mandatory minimum to be imposed consecutively. Therefore, adding in the seven-year mandatory minimum, the presentence report recommended a total range of 205 to 235 months' imprisonment. During the resentencing hearing, Meredith-Hill did not object to the presentence report and agreed that its calculation was accurate.

After explaining the applicable Guidelines range, the district court carefully considered each of the factors in 18 U.S.C. § 3553(a). First, the court recognized that the nature and circumstances of the instant offense were particularly egregious, endangering multiple employees during the armed robberies as well as multiple individuals during the subsequent high-speed chase

---

[2] Because § 924(c) precludes the application of U.S.S.G. § 2B3.1, the vacatur of the § 924(c) charge may validly result in the five-level enhancement upon a *de novo* resentencing. *See, e.g.*, *United States v. Pembrook*, 79 F.4th 720, 724 (6th Cir. 2023) (explaining that the defendants' Guidelines range increased from their original sentencing "because the new PSRs added a five-level enhancement for brandishing a firearm, which applied only after the second § 924(c) charge was excluded"); *United States v. Diaz*, 639 F.3d 616, 618 (3d Cir. 2011) (explaining that, because a § 924(c) conviction and the underlying conviction are interdependent, *de novo* sentencing is appropriate to consider newly applicable enhancements). Meredith-Hill did not object to this five-level enhancement and agreed that he (or those he jointly engaged in criminal activity with) brandished firearms during the robbery.

through highway traffic. Based on the violent nature of the crimes and the reckless disregard for public safety when Meredith-Hill fled law enforcement, the court found that he presented a risk of danger to the community. Next, the district court weighed these factors against Meredith-Hill's difficult history and childhood, as well as his mental health and substance abuse issues. Additionally, despite his traumatic upbringing and hardships, Meredith-Hill clearly took advantage of the rehabilitative programming available during incarceration, and the district court highlighted his commendable recent educational efforts.

Turning to the arguments from the parties, Meredith-Hill's attorney argued for a downward variance, encouraging the district court to reference "[Meredith-Hill's] original 87 to 108 guidelines" for Counts 1 and 3, and to impose a total of 144 months' imprisonment. Apr. 25, 2023, Tr. Sent'g Hr'g, R. 127, Page ID #2068. In further support of the downward variance request, defense counsel pointed to Meredith-Hill's young age at the time of the conviction, limited role in the perpetration of the armed robberies, extremely difficult childhood, and recent strides in education and maturity. In contrast, the government argued for a sentence towards the higher end of the advisory Guidelines, noting that the original sentence adequately accounted for the severity of the crime and contending that the court should not significantly stray from its initial sentence. After hearing arguments from both sides, the district court acknowledged each argument and noted that, despite the seriousness of Meredith-Hill's violent and aggressive crimes, his youth and impoverished upbringing influenced its calculations.

In selecting its ultimate sentence, the district court noted that it "still believe[d]" that the initial sentence "was sufficient but not greater than necessary to affect the purposes of sentencing." *Id.* at Page ID #2092. However, the district court recognized that it must operate from a different Guidelines sentencing range due to its vacatur of Count 2. Ultimately, the district court imposed

5

a 205-month term of imprisonment, specifically "find[ing] that the reduced sentence [was] appropriate in this case because of the strides that Mr. Meredith-Hill is making." *Id.* at Page ID #2093. The court stated that, "[h]ad [Meredith-Hill] not made any progress, the sentence would have been the same [as his original sentence],"[3] because its considerations revolving around his criminal history, the seriousness of the instant offense, and other § 3553(a) factors remained largely identical. *Id.*

The district court concluded the sentencing hearing by inquiring whether there were "any objections or [] any reason[s] why the sentence as stated by the Court should not be imposed." *Id.* at Page ID #2100. In response, Meredith-Hill objected to the denial of a downward variance because the new sentence did "not adequately account for his post sentencing conduct." *Id.* at Page ID #2101. This timely appeal followed.

## II.  DISCUSSION

### A.  Standard of Review

We generally review the district court's sentencing decisions under a deferential abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 46 (2007). While legal conclusions are reviewed *de novo*, factual conclusions are reviewed for clear error. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). Further, we review a criminal sentence for both procedural and substantive reasonableness. *See United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012) (citing *Gall*, 552 U.S. at 51). However, the parties in this case agree that plain error review applies because Meredith-Hill did not raise any procedural reasonableness objection in front of the district

---

[3] The district court later stated that the original sentence "or something close to the original sentence, and that was closer to what the government was asking" would have been appropriate without Meredith-Hill's significant growth and progress. *Id.* at Page ID #2101.

court.  *Cf. United States v. Sherrill*, 972 F.3d 752, 768–69 (6th Cir. 2020) (citing *United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009)).  Even if Meredith-Hill had successfully shown that the issue was preserved and that an abuse of discretion standard should apply, the outcome in this case would remain the same because his sentence was procedurally reasonable.

Plain error review requires the Court to consider whether there is:  "(1) error (2) that was 'obvious or clear,' (3) that 'affected [the] defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'"  *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018) (alteration in original) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).  Several circumstances may illustrate that the district court erred by imposing a procedurally unreasonable sentence under this standard, including if the court "failed to calculate the Guidelines range properly; treated the Guidelines as mandatory; failed to consider the factors prescribed at 18 U.S.C. § 3553(a); based the sentence on clearly erroneous facts; or failed to adequately explain the sentence."  *United States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015) (citation omitted); *see also United States v. Johnson*, 680 F. App'x 451, 455 (6th Cir. 2017).

## B. Analysis

Meredith-Hill argues that his sentence "is procedurally unreasonable, because instead of using the applicable advisory guidelines range as the starting point and benchmark for his sentence, the lower court used his prior sentence as the reference point for choosing his new sentence."  Pet'r's Br., ECF No. 15, 10.  Due to the district court's repeated references to his prior sentencing, Meredith-Hill contends that the court cast his new Guidelines range to the side, instead opting to impermissibly tether the new sentence to the length of his original sentence.  Further, Meredith-Hill argues that this error affected his substantial rights because he could have received a more

7

favorable sentence. Finally, Meredith-Hill underscores the long-established principle that the district court must use the Guidelines as a starting point as evidence that the error affected the fairness and integrity of the proceedings.

At the very least, Meredith-Hill is correct that the district court repeatedly mentioned his prior sentence and prior sentencing range. For example, the district court stated that it "still believe[d] that [the] initial sentence at the time [the court] imposed it was sufficient but not greater than necessary to affect the purposes of sentencing." Apr. 25, 2023, Tr. Sent'g Hr'g, R. 127, Page ID #2092. The court explained that its reduction was appropriate due to the "strides that Mr. Meredith-Hill [made]" and noted that "[h]ad he not made any progress, the sentence would have been the same." *Id.* at Page ID #2093. Instead of a sentence "close to the original sentence," the court recognized that his new sentence was "50 months shorter . . . in recognition of [Meredith-Hill's] progress." *Id.* at Page ID #2101.

However, Meredith-Hill's arguments nonetheless fall short. The district court started the hearing by properly calculating and explaining the newly applicable Guidelines range of 121 to 151 months' imprisonment. And the district court did not initially discuss the original sentence, nor was the court the impetus behind the continued references to the original sentence. Meredith-Hill fails to recognize that the parties themselves focused on the original sentence as a frame of reference for selecting the proper new sentence.

In fact, Meredith-Hill asked the district court to impose a downward variance by disregarding the new, higher Guidelines range attributed to Counts 1 and 3. In other words, instead of using the newly calculated range of 121 to 151 months, Meredith-Hill contended that the "original 87 to 108 guidelines" were the proper benchmark due to his young age and other mitigating circumstances. *Id.* at Page ID #2068. Then, the government asked for a sentence "as

similar as possible to what [the court] originally imposed" because, other than pursuing commendable educational efforts while incarcerated, no factual circumstances had changed from the district court's original sentencing analysis. *Id.* at Page ID #2086. As evidenced by both parties' reliance upon the original sentence in framing their respective resentencing arguments, the unique circumstances of this resentencing made it nearly impossible to completely disregard the analysis that the district court undertook in imposing its original sentence. Therefore, as opposed to Defendant's argument that the district court used his prior sentence as an anchor, the record reflects that the court referenced its originally imposed sentence towards the end of the resentencing hearing to adequately respond to the arguments that the parties themselves made.

Further, there is no blanket "prohibition in the guidelines, or in the case law interpreting the guidelines, keeping a district judge from revisiting the entire sentencing procedure unless restricted by the remand order," provided that the district court does not act vindictively. *United States v. Duso*, 42 F.3d 365, 368 (6th Cir. 1994); *see also United States v. Washington*, No. 20-2333, 2023 WL 2945902, at *3 (3d Cir. Apr. 14, 2023) (ordering a *de novo* resentencing in similar circumstances for the district court to "revisit its 'overall plan'"). No such prohibition existed in the instant case, as the district court required a *de novo* sentencing hearing under the sentencing package doctrine. This doctrine recognizes that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains *in light of the original plan*." *United States v. Mainville*, 9 F. App'x 431, 436 (6th Cir. 2001) (emphasis added) (quoting *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999)).

Therefore, the district court in this case did not err in considering the efficacy of the new Guidelines range "in light of [its] original plan." *Id.* Indeed, noting the original sentence is exactly what the sentencing package doctrine contemplates.[4] *See Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997) ("[Section] 2255 gives the [district] court jurisdiction and authority to reevaluate the entire aggregate sentence to ensure that the defendant receives the appropriate sentence on the remaining count."); *United States v. Faulkenberry*, 614 F.3d 573, 591 (6th Cir. 2010) (vacating all of defendant's sentences, instead of solely vacating the one invalid sentence, because "[h]ad the district court known that [certain convictions] were invalid, it might have chosen to make some of the other sentences consecutive rather than concurrent").

Accordingly, although the district court clearly took note of its previously imposed sentence, the record does not indicate that it improperly used the original sentence, as opposed to the undisputed Guidelines range, as a starting point or benchmark to guide its *de novo* analysis. One of the very first items that the district court covered during resentencing was the new Guidelines range. Further, towards the end of the resentencing hearing, the court's present-tense language, "I *still believe* that the initial sentence [was sufficient]," indicates a *new* decision as to fairness in light of the *new* Guidelines range—indeed, because the Guidelines are discretionary, the district court could have opted to impose the exact same sentence, so long as it provided adequate explanation. Apr. 25, 2023, Tr. Sent'g Hr'g, R. 127, Page ID #2092 (emphasis added); *see, e.g.*, *United States v. Sanchez*, 326 F. App'x 308, 309 (5th Cir. 2009) (affirming the district court's upward variance and reinstatement of the original sentence); *United States v. Obi*, 542 F.3d

---

[4] Of course, the sentencing package doctrine does not allow a district court to anchor its analysis at the prior Guidelines range or completely disregard the newly calculated Guidelines range. And the district court in this case engaged in neither of these impermissible actions.

148, 155–56 (6th Cir. 2008) (upholding same sentence on resentencing). Moreover, this statement is immediately followed by the recognition of the new Guidelines range and the elimination of one of the seven-year mandatory minimum sentences, as well as a reiteration of the parties' respective positions, which were each anchored to the new Guidelines range.

Overall, the district court meticulously considered each factor delineated in 18 U.S.C. § 3553(a) and Meredith-Hill's arguments for a lower sentence, as required to impose a procedurally reasonable sentence. *See Gall*, 552 U.S. at 49–52; *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007). The district court did not eschew proper procedures in an attempt to evade the correct Guidelines range or reverse-engineer a sentence similar to the original; instead, it started fresh with the new Guidelines as its starting point and merely recognized the differences between Meredith-Hill's original sentencing and his resentencing. For these reasons, the district court did not plainly err in imposing a sentence at the bottom of Meredith-Hill's newly calculated Guidelines range. We **AFFIRM** the judgment of the district court.